Ercilia ACEVEDO, Henry Allen Bauldwin, Jr. and Armando Acevedo, Sr., Appellant,

v.

The STATE of Texas, Appellee.

Nos. 60536 to 60538.

Court of Criminal Appeals of Texas, Panel No. 2.

March 10, 1982.

---

Kenneth W. Boyd and Michael J. Rogers, Cleburne, for appellant.

Dan M. Boulware, County Atty., and Dennis W. Bridewell, Asst. County Atty., Cleburne, Robert Huttash, State's Atty., Austin, for the State.

Before ONION, P. J., and TOM G. DAVIS and CLINTON, JJ.

## OPINION

CLINTON, Judge.

These appeals are from three convictions for the offense of commercially exhibiting obscene materials under former V.T.C.A. Penal Code, § 43.23(a)(1). The jury assessed punishment in Nos. 60,536 and 60,537 at confinement in the county jail for 180 days and a fine of $200.00, but recommended probation. In No. 60,538 the jury assessed punishment at confinement in the county jail for 180 days, but recommended probation.

Though appellants present some seven grounds of error for our consideration, we need reach but one. In ground of error number seven, there is a challenge to sufficiency of the evidence.[1]

The question of sufficiency of the evidence to sustain a State criminal conviction implicates the Fourteenth Amendment. *Jackson v. Virginia*, 443 at 319, n. 12, 99 S.Ct. at 2789, n. 12, 61 L.Ed.2d 560 "announced the constitutional minimum required to enforce the due process right" to be free from conviction except on proof beyond a reasonable doubt. In *Griffin v. State*, 614 S.W.2d 155, 159 (Tex.Cr.App. 1981), the Court, quoting *Jackson, supra*, stated:

"[T]he critical inquiry on review of sufficiency of the evidence to support a criminal conviction must not be simply to determine whether the jury was properly instructed, but to determine whether the record evidence could reasonably support a finding of guilt beyond a reasonable doubt. But this inquiry does not require a court to 'ask itself whether *it* believes that the evidence at the trial established guilt beyond a reasonable doubt.' *Woodby v. INS*, 385 U.S. [276] at 282 [87 S.Ct. 483, at 486, 17 L.Ed.2d 362]. (Emphasis added) Instead, the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt."

As Judge Roberts, writing for the Court in *Griffin, supra*, stated, a conviction that is obtained even when no rational trier of fact could have found guilt cannot constitutionally stand. Applying this standard to the case before us, we hold the evidence insufficient to support all three verdicts, and reverse the judgments.

Deputy Sheriff D. J. Moulder attended a showing at the Trail Drive-In on the evening of December 5, 1977 in Johnson County where the movies "Cherry Truckers" and "Fulfillment" were playing.[2] Moulder purchased a ticket, watched both features and, the following day, consulted with the district attorney regarding institution of criminal charges against appellants. Moulder procured arrest warrants and a search warrant from a Justice of the Peace in Alvara-

1. We feel it should be noted at the outset that a single appellate brief was filed on behalf of all three appellants. The sufficiency of the evidence was raised only as to the evidence to support Mr. Acevedo's conviction. We reach the sufficiency of the evidence to support the convictions of Mrs. Acevedo and Mr. Bauldwin on a constitutional basis. See *Jackson v. Vir-*

*ginia*, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979).

2. Although three films were seized by Moulder on December 6, 1977, only two films were alleged in the information as having been commercially exhibited.

do and again proceeded to the Trail Drive-In, and purchased a ticket for admission. At some point in the evening while watching the films, Moulder went to the snack bar where he observed two appellants, Mrs. Acevedo and Bauldwin, serving refreshments.[3] After purchasing a hamburger and coke, Moulder returned to his car and watched the remainder of the films. After watching "Cherry Truckers" and "Fulfillment," Moulder executed the arrest warrants by taking Mrs. Acevedo and Bauldwin into custody. In addition Moulder arrested Mr. Acevedo, who was standing in the doorway between the snack bar and the projection room,[4] and Goocher, who sold the tickets on the evening in question.[5] Both films were confiscated. The jury viewed both films as part of the presentation of the State's case.[6]

Appellants were charged with the offense of commercially exhibiting two obscene films. V.T.C.A. Penal Code, § 43.23, provided in relevant part:

> "(a) A person commits an offense if, knowing the content of the material:
> (1) he sells, commercially distributes, commercially exhibits, or possesses for sale, commercial distribution, or commercial exhibition any obscene material;"

The State seeks to prove appellants' complicity as parties to the offense through V.T.C.A. Penal Code, § 7.02, which provides:

> "(a) A person is criminally responsible for an offense committed by the conduct of another if:
>
> *  *  *  *  *  *
>
> (2) acting with intent to promote. or assist the commission of the offense, he solicits, encourages, directs, aids, or attempts to aid the other person to commit the offense;"

Under this provision, the State argued each appellant while acting with the intent to promote or assist in commercial exhibition of two obscene films was aiding the others.

In *Smith v. State*, 530 S.W.2d 955 (Tex. Cr.App.1976), the Court defined the phrase "commercially exhibit" as meaning "to exchange for valuable consideration." "Valuable consideration," the Court explained, "is not limited to money." *Id.*, at 956. The Court in *Smith*, however, stopped short of indicating whether § 43.23, supra, proscribed conduct of an employee who has no financial interest in a motion picture theater, wherein he is so employed, other than his wages received.[7] Because there have not been any cases since the obscenity statutes were revised in 1974[8] on that point we look to additional resources to ascertain whether such an interpretation was intended.

V.T.C.A. Penal Code, § 1.05, states that provisions of the code are to be construed "according to the *fair import* of their terms, to promote justice and effect the objectives

3. Specifically, Bauldwin prepared hamburgers.

4. Moulder testified at no time did he observe Mr. Acevedo doing anything other than standing in the doorway; we assume he was an employee.

5. Goocher's appeal of her conviction obtained in a joint trial with appellants' is treated by separate opinion in Cause No. 60,539.

6. We note in passing that the two films were introduced into evidence without first having been viewed by the court out of the jury's presence to determine the films' admissibility. See *Cotlar v. State*, 558 S.W.2d 16 (Tex.Cr.App. 1977).

7. It is interesting to note that *Berg v. State*, 599 S.W.2d 802 (Tex.Cr.App.1980), involved a tick- et taker at the same drive-in theater as the one in the instant case. *Berg* was reversed because the trial court refused to admit into evidence nine magazines and one film offered by the defendant to reflect "contemporary community standards" as that term is used in the statute, thereby obviating the need to interpret the remaining language of the statute.

8. In 1973, the Texas Legislature created Subchapter B of Chapter 43 to replace former anti-obscenity statutes. Again in 1979, the Legislature substantially overhauled the subchapter. Of course we do not intimate any views concerning the 1979 revision.

of this code." [9] Additionally, § 2.01 of the Code Construction Act, art. 5429b–2, V.A.T.S., provides that words contained in the penal code are to be construed "according to the rules of grammar and common usage."

A standard dictionary serves as one source from which an interpretation may be ascertained. Webster's Third International Dictionary (1961) defines "exhibit" as "to show or display publicly." In addition, "commercial" is defined as "engaging in work designed for the market." "Assist" means "to give support to or aid." *Id.* And "promote" means "to bring into being (e.g., business enterprise)."

In addition to defining the terms involved, § 3.03 of the Code Construction Act, supra, suggests the Court look to other aids in construing the statute: (1) object sought to be obtained; (2) circumstances under which the statute was enacted; (3) legislative history; (4) common law or former statutory provisions, including laws upon the same or similar subject; (5) consequences of a particular construction; (6) title, preamble, and emergency provision.

Former Art. 527, Vernon's Ann.P.C. (1925), reveals a legislative determination to provide employees like appellant an affirmative defense to the offense of commercial obscenity. Art. 527, supra, stated:

"This article shall not apply to persons who may possess or distribute obscene matter or participate in conduct otherwise proscribed by this article when such possession, distribution, or conduct occurs ... in the course of employment as a moving picture operator or assistant operator, in a motion picture theater in connection with a motion picture film or show exhibited in said theater if such operator or assistant operator has no financial interest in the motion picture theater wherein he is so employed other than his usual wages received or owed, or like circumstances of justification where the distribution, or conduct is not limited to the subject matter's appeal to prurient interests."

The legislative history indicates that the purpose of this section, a provision common in substance to the obscenity statutes of several other states,[10] was to afford a defense to some who function merely as employees, while imposing penal sanctions for those whose financial stake in the enterprise dictates that they bear the brunt of criminal responsibility. Acts 1971, 62nd Leg., p. 2723, ch. 887.

■ We believe "the fair import of [the] terms" [11] which constitute the gravamen of the offense of exhibition of obscenity as then proscribed by § 43.23(a)(1), supra, compels the conclusion that the conduct denounced does not include that which is merely incidental to the *exhibition* of obscenity. To say that one who serves concessions at a drive-in theater or one who stands in the general vicinity of the projector, absent a showing of any other activity on that one's part, is guilty of "acting with intent to promote or assist the commercial exhibition" of two obscene films

---

**9.** All emphasis is supplied throughout by the writer of this opinion unless otherwise indicated.

**10.** The following statutes provide a specific exemption for the projectionist: Cal.Penal Code § 311.2(c) (West 1970 and Supp.1977); Minn. Stat.Ann. § 617.295(c) (also for the usher or cashier); Nev.Rev.State. § 201.254 (also stagehand); N.H.Rev.Stat.Ann. § 650.3; N.Y.Penal Code § 235.15(2) (McKinney Supp. 1976–1977) (also stage employee, cashier, doorman, usher, stand attendant, porter); Okla.Stat.Ann. tit. 21, § 1040.53 (also usher, cashier); R.I.Gen.Laws § 11–31–15; S.D.Compiled Laws Ann. § 22– 24–37(3); Utah Code Ann. § 76–10–1208(2); Va.Code § 18.2–375 (general exemption for non-managers); Wash.Rev.Code Ann. § 9.68.-010(2).

The following codes and proposals provide a general exemption for people acting within the scope of their employment: Idaho Code § 18–4102(C); La.Rev.Stat. § 14:106(C); Mass.Gen. Laws Ann. ch. 272, § 32 (West Cum.Supp. 1976–1977); N.J.Stat.Ann. § 2A:115–6; Va. § 18.2–375(2); W.Va.Code § 61–8A–3.

**11.** See § 1.05(a), supra.

is to contravene the objectives of the penal code.[12]

■ After viewing the evidence in the light most favorable to the prosecution, we conclude that no rational trier of fact could have found that appellants committed the offense of commercial exhibition of obscenity beyond a reasonable doubt. We reverse the judgments of conviction and reform them to show an acquittal.[13]

---

**12.** V.T.C.A. Penal Code, § 1.02, states that the provisions of the code shall be construed to:

"(1) insure public safety. . .;
(2) *give fair warning of what is prohibited* and the consequences of the violation;
(3) proscribe penalties that are proportionate to the seriousness of the offenses. . .;
(4) *safeguard conduct that is without guilt from condemnation as criminal*;
(5) guide and limit the exercise of official discretion in law enforcement. . .; and

(6) *define the scope of state interest in law enforcement* against specific offenses and to systematize the exercise of state criminal jurisdiction."

**13.** The Court's reversal on insufficient evidence obviates the need for us to address appellants' six remaining grounds of error.