**William T. GHOLSON, Appellant,**

v.

**STATE of Texas, Appellee.**

**No. C14–81–420CR.**

Court of Appeals of Texas,
Houston (14th Dist.).

June 23, 1983.

Rehearing Denied July 28, 1983.

Discretionary Review
Refused Jan. 6, 1984.

Clyde W. Woody, Houston, for appellant.
James Brough, Houston, for appellee.

Before JUNELL, MURPHY and SEARS, JJ.

MURPHY, Justice.

A jury found William T. Gholson (Appellant) guilty of promoting obscene material in violation of TEX.PENAL CODE ANN. § 43.23 (Vernon Supp.1982–1983). In his appeal he raises seven grounds of error relating to inaccuracies in the statement of facts, the constitutionality of various provisions in §§ 43.21 and 43.23 of the Texas Penal Code, the adequacy of the affidavit upon which the information and search warrant depended, and the sufficiency of the evidence concerning the act of promotion of the material. Sufficiency of the evidence relating to the finding that the material was obscene has not been raised on appeal, and so we decline to address that issue. We affirm.

Appellant is the owner of the Bellaire News Stand in Harris County. On October 15, 1979, undercover officer R.E. Thompson of the Houston Police Department went to the newstand and purchased VHS video cassettes entitled "Behind the Green Door" and "One Way At A Time" from a clerk. Officer Thompson then returned to the Vice Squad office with the cassettes and discovered the Department's video machine was a Betamax model which was not compatible with the VHS cassettes. He returned to the Bellaire News Stand later that same day and exchanged the VHS cassettes for Betamax versions of "One Way at a Time" and "Barbara Broadcast." At the time of the exchange, Appellant was standing near the clerk and was talking on the telephone. He interrupted his conversation to authorize the transaction, and he remained nearby when the clerk paid an $18.00 refund.

In April 1980, Appellant was charged by information with the misdemeanor offense of obscenity, and specifically with promoting or selling obscene material with knowledge of its content. "Barbara Broadcast" was the only obscene material mentioned in the information. The warrant for Appellant's arrest was served in May 1980. A number of pre-trial motions, including a motion to suppress evidence and motions to quash the information, were denied. Trial

was to a jury in February 1981. The jury heard extensive testimony and viewed numerous exhibits, including the films purchased by the undercover officer. Appellant was found guilty as charged, and was sentenced to one year in jail and fined $2,000.00. The record on appeal consists of eighteen volumes, including a ten volume statement of facts and six volumes of exhibits.

The state of the appellate record has provoked controversy. Prior to perfecting his appeal to this court, Appellant had considerable difficulty in obtaining a statement of facts because the court reporter became ill after the trial and was unable to promptly transcribe her notes. This court issued a writ of mandamus in January 1982 and ordered her to provide the statement of facts on or before February 11, 1982. Appellant filed a second objection to the appellate record, the court reporter was found in contempt by this Court on March 19, 1982, and part of the statement of facts was filed in the trial court on April 12, 1982. In May Appellant again objected to the record because of numerous spelling errors in the transcription. Additional volumes of the statement of facts were filed in June, and Appellant objected for the third time to uncorrected spelling errors. On July 26, 1982 the trial court approved the record stating: "Record approved with its many inaccuracies as the Court believes that the many, many misspelled words might make sense if read phonetically."

Appellant in his first two grounds of error maintains that in overruling his third objection to the appellate record the trial court (1) contravened the requirement imposed by TEX.CODE CRIM.PROC.ANN. art. 40.09, § 7 (Vernon Supp.1982–1983) that the record speak the truth, and (2) denied him effective assistance of counsel and due process in violation of the Fifth, Sixth and Fourteenth Amendments to the United States Constitution. We disagree with both contentions.

A statement of facts must be approved by counsel for both parties or by the trial judge to be considered by an ap-

pellate court. *McDearmon v. State*, 171 Tex.Cr. 161, 346 S.W.2d 335, 336 (1961). In this case, the trial court approved the transcript of the court reporter's notes despite a multitude of spelling errors. Most of Appellant's complaints are directed at misspelled words which, though numerous and pervasive, can be readily deciphered, particularly when read in context. It is obvious to us, for example, that "William T. Gholsom" refers to William T. Gholson, that "Betamack" means Betamax, that "bailie" should be bailiff, and that "peerant interest in sex" is prurient interest in sex (the court reporter is not the first person to be perplexed by the word, prurient). We do not find the typographical errors in the statement of facts to be so serious as to render the document unintelligible. *See Searcy v. State*, 40 Tex. 460, 50 S.W. 699, 700 (1899). Appellant's first two grounds of error are overruled.

The most difficult questions posed by Appellant are found in grounds of error three and four, in which he challenges the constitutionality of TEX.PENAL CODE ANN. § 43.21(a)(4) and (a)(5) on the grounds of overbreadth, both on the face of the provisions and as they were applied to him in the prosecution. In the interest of a coherent discussion, we will briefly delineate the legal context of Appellant's assertions before addressing his specific complaints.

 It is well settled in American jurisprudence that the right of free speech is not absolute and that obscenity does not fall within the bounds of expression protected by the First Amendment to the United States Constitution. *Roth v. United States*, 354 U.S. 476, 485, 77 S.Ct. 1304, 1309, 1 L.Ed.2d 1498 (1957). Obscenity may be regulated without infringing on First Amendment rights because it has such slight social value as a medium of speech and expression of ideas that any benefit from it is clearly outweighed by society's interest in order. *Chaplinsky v. New Hampshire*, 315 U.S. 568, 572, 62 S.Ct. 766, 769, 86 L.Ed. 1031 (1942). The courts and legislatures of this country have produced mammoth amounts of verbiage in an effort to clarify the standards to be used in identifying obscene material. Relatively concise guidelines to be used by the trier of fact in differentiating between obscenity and constitutionally protected expression were set forth in *Miller v. California*, 413 U.S. 15, 24, 93 S.Ct. 2607, 2614, 37 L.Ed.2d 419 (1973):

(a) whether "the average person, applying contemporary community standards," would find that the work, taken as a whole, appeals to the prurient interest;

(b) whether the work depicts or describes in a patently offensive way, sexual conduct specifically defined by the applicable state law; and

(c) whether the work, taken as a whole, lacks serious literary, artistic, political or scientific value.

The Texas Legislature has incorporated language from *Miller* into the criminal obscenity statute under which Appellant was prosecuted, TEX.PENAL CODE ANN. §§ 43.21–43.23 (Vernon 1974 & Vernon Supp.1982–1983). The three part test quoted above is found in § 43.21(a)(1)(A), (B), and (C).

## STANDARD OF REVIEW IN AN OVERBREADTH CHALLENGE

Before analyzing Appellant's third and fourth grounds of error, a few general observations about statutory construction and judicial review in the area of the First Amendment are in order.

 The overbreadth doctrine is one of several judicial techniques used in the adjudication of First Amendment claims. It is founded on the principle that "a governmental purpose to control or prevent activities constitutionally subject [to] regulation may not be achieved by means which sweep unnecessarily broadly and thereby invade the area of protected freedoms." *NAACP v. Alabama ex rel. Flowers*, 377 U.S. 288, 307, 84 S.Ct. 1302, 1313, 12 L.Ed.2d 325 (1964).

In contrast to the typical "as applied" analysis of a statute with First Amendment ramifications, the overbreadth approach used by the federal courts does not reach the question of whether the challenger's activities are constitutionally protected. Instead, the doctrine alters normal rules of standing and permits the invalidation of a statute because of the potential application of it to the constitutionally protected activity of others not before the court. *County Court v. Allen,* 442 U.S. 140, 99 S.Ct. 2213, 60 L.Ed.2d 777 (1979). *Broadrick v. Oklahoma,* 413 U.S. 601, 93 S.Ct. 2908, 37 L.Ed.2d 830 (1973). However, Texas does not subscribe to the federal method of analyzing an overbreadth challenge. Our state courts consistently have insisted that standing to challenge the constitutionality of portions of a statute is predicated on a defendant's having had those portions applied to him. *See, e.g., Gaffney v. State,* 575 S.W.2d 537, 541 (Tex. Cr.App.1978); *Scott v. State,* 460 S.W.2d 103, 107 (Tex.1970); *Red Bluff Drive-In, Inc. v. Vance,* 648 F.2d 1020, 1030 (5th Cir.1981).

Since criminal penalties can be imposed by a statute which implicates First Amendment guarantees, the Texas Penal Code scheme must be subjected to close scrutiny. *Beck v. State,* 583 S.W.2d 338, 343 (Tex.Cr.App.1979). On the other hand, according to contemporary overbreadth analysis, no state statute should be declared facially invalid unless state courts cannot readily construe it more narrowly and, in addition, unless the statute's deterrent effect on legitimate speech and conduct is both real and substantial in relation to the statute's legitimate sweep. *Erznoznik v. City of Jacksonville,* 422 U.S. 205, 217, 95 S.Ct. 2268, 2276, 45 L.Ed.2d 125 (1975); *Broadrick v. Oklahoma,* 413 U.S. at 616, 93 S.Ct. at 2918; Note, *The First Amendment Overbreadth Doctrine,* 83 Harv.L.Rev. 844, 858–865 (1970).

## THE DEFINITION OF "PATENTLY OFFENSIVE" IN § 43.21(a)(4)

Appellant's third ground of error contains an overbreadth challenge to the validity of Penal Code § 43.21(a)(4), which defines the term, "patently offensive," from the second part of the *Miller* test as follows:

(4) "Patently offensive" means so offensive on its face as to affront current community standards of decency.

Appellant argues that the provision, by restricting community standards to those "of decency" rather than those "of tolerance," punishes protected speech both on its face and as it was applied to him through TEX. PENAL CODE ANN. § 43.23 (Vernon 1974). Section 43.23 provides, in pertinent part, that it is a Class A misdemeanor to promote, or possess with intent to promote, any obscene material or obscene device with knowledge of its content and character. The court's charge to the jury defined patently offensive as "... so offensive on its face as to affront current community standards of decency for adult persons in Harris County, Texas." Because this term was applied to Appellant, we are of the opinion that he has standing to assert an overbreadth challenge.

We are well aware of the recent decision of the Texas Court of Criminal Appeals in *Andrews v. State,* 652 S.W.2d 370 (Tex.Cr. App.1983) which upheld the validity of § 43.21(a)(4), thereby resolving a conflict among several Courts of Appeals. *See, e.g., Hoyle v. State,* 650 S.W.2d 97 (Tex.App.—Houston [14th Dist.], 1982); *Shelton v. State,* 640 S.W.2d 649 (Tex.App.—Houston [14th Dist.] 1982); *Tyree v. State,* 638 S.W.2d 245 (Tex.App.— Fort Worth 1982) (all holding § 43.21(a)(4) is not overly broad). *Contra Stonelake v. State,* 638 S.W.2d 619 (Tex.App.—Houston [1st Dist.] 1982); *Andrews v. State,* 639 S.W.2d 4 (Tex.App.—Houston [1st Dist.] 1982) (holding § 43.21(a)(4) is overbroad as written). With all due respect to our brethen, we have found none of these opinions to be particularly helpful with this issue. Therefore, we will suggest what we hope is a clearer analysis.

There are several reasons for our concluding that § 43.21(a)(4) is constitutionally valid.

The phrase, "community standards of decency," apparently first became affixed to the concepts of patent offensiveness and indecency in *Manual Enterprises, Inc. v. Day*, 370 U.S. 478, 82 S.Ct. 1432, 8 L.Ed.2d 639 (1962). In that case, the Court stated:

(t)hese magazines cannot be deemed so offensive on their face as to affront current community standards of decency—a quality we shall hereafter refer to as "patent offensiveness" or "indecency."

*Id.* at 482, 82 S.Ct. at 1434. It is probably no coincidence that the Texas Legislature's definition of "patently offensive" tracks the *Manual Enterprises* language almost word for word. We have found no indication that the Supreme Court subsequently has rejected its own description of the qualities of patent offensiveness and indecency.

We can look to another Supreme Court decision, *F.C.C. v. Pacifica Foundation*, 438 U.S. 726, 98 S.Ct. 3026, 57 L.Ed.2d 1073 (1978), for further insight into the link between the concepts of patent offensiveness and indecency. By applying a federal statute which prohibited the use of "any obscene, indecent or profane language by means of radio communications," the F.C.C. had determined that several words which had been used in a broadcast were patently offensive and, therefore, the broadcast was indecent. *Id.* at 740, 98 S.Ct. at 3035. In upholding the Commission's findings, the Court differentiated between the various elements of obscenity which, individually, are not "obscene." Rather, each element merits some degree of protection under the law unless and until all coalesce to form another category of unprotected expression called obscenity. *Id.* at 741–742, 98 S.Ct. at 3036. For example, while obscenity is, by definition, unprotected by the First Amendment, merely patently offensive words dealing with sex and excretory functions are not entirely outside the protection of the First Amendment. *Id.* at 746, 98 S.Ct. at 3038.

Admittedly, in the case at bar we are concerned with conduct, not pure speech, in the context of a state and not a federal statute, but we can glean from *F.C.C. vs. Pacifica* a relevant message: it is entirely proper to associate the concepts of "patent offensiveness" and "indecency." See *F.C.C. v. Pacifica*, 438 U.S. at 741 n. 15, 98 S.Ct. at 3036.

A California jury charge was under attack on constitutional grounds in *Miller v. California*, 413 U.S. at 18, 93 S.Ct. at 2611. The jury in *Miller* had been instructed to determine, among other things, whether the allegedly obscene material "goes substantially beyond customary limits of candor and affronts contemporary community standards of decency." *Id.* at 31, 93 S.Ct. at 2618. In considering the correctness of the charge, the focus of the Supreme Court was on the issue of whether national or local standards should be applied. However, the Court failed to find any constitutional error in the instructions. *Id.*

Upon close reading, other decisions by federal courts have given the states considerable leeway in patterning their obscenity statutes after the *Miller* guidelines. We find *Smith v. United States*, 431 U.S. 291, 97 S.Ct. 1756, 52 L.Ed.2d 324 (1977) and *Red Bluff Drive-In, Inc. v. Vance*, 648 F.2d 1020, to contain implicit and explicit approval of the Texas Legislature's efforts to implement the dictates of *Miller*.

In the context of an obscenity prosecution under a federal statute, Justice Powell observed in *Smith v. United States:*

I emphasize ... that this case presents no question concerning the limits on a State's power to design its obscenity statutes as it sees fit or to define community standards as it chooses for purposes of applying *its own* laws. Within the boundaries staked out by Miller, the States retain broad latitude in this respect.

431 U.S. at 310, 97 S.Ct. at 1768 (Powell, J., concurring both as to the result and to the reasoning of the majority) (emphasis in original). *Accord Jenkins v. Georgia*, 418 U.S. 153, 158, 94 S.Ct. 2750, 2753, 41 L.Ed.2d 642 (1974). We believe the apparent approval by the *Smith* majority of the concept of community standards "of tolerance" to be mere dictum. Even as dictum,

the discussion in *Smith* concerns the issue of overbreadth of a federal statute as applied through jury instructions, and not the issue of facial overbreadth of a state statute:

> Our decision that contemporary community standards *must be applied by juries* in accordance with their own understanding of the tolerance of the average person in their community does not mean, as has been suggested, that obscenity convictions will be virtually unreviewable.

431 U.S. at 305, 97 S.Ct. at 1766 (emphasis added).

The Court of Appeals for the Fifth Circuit has expressly abstained from rendering a narrowing construction of § 43.-21(a)(4) in deference to state courts, but nonetheless has held that the provision is not facially overbroad:

> If on its face the statute warned too broadly, deference to the state courts would be inappropriate. Such is not the case here.

*Red Bluff Drive-Inn v. Vance,* 648 F.2d at 1029.

We believe a number of readers, including Appellant, have become so entangled in the syntax of § 43.21(a)(4) that they have missed the essence of that provision. The gist of the second part of the *Miller* test is simply whether or not the depicted sexual conduct is "patently offensive" to the average person in the community. 413 U.S. at 24, 30, 93 S.Ct. at 2618. By amending the Penal Code and adding a definition of "patently offensive," the Legislature unnecessarily elaborated on a concept which is a question of fact. *See Miller,* 413 U.S. at 30, 93 S.Ct. at 2618; Comment, *Texas' Obscenity Laws,* 17 Hous.L.Rev. 835, 871 (1980).

The meager legislative history of H.B. 1741, the amendment to § 43.21 which added the definition of "patently offensive," is not a useful tool in trying to ascertain legislative intent. *See* House Comm. on Criminal Jurisprudence, Bill Analysis, Tex. H.B. 1741, 66th Leg. (1979). However, as a possible indication of legislative intent, all obscenity provisions are found in Title 9 of the Penal Code which is entitled "Offenses Against Public Order and Decency." Specifically, Subchapter B. Obscenity is placed in Chapter 43, "Public Indecency." Thus, the statutory definition of "patently offensive" which includes the word, "decency," is in harmony with its setting in the Penal Code.

Our assessment of § 43.21(a)(4) is that it is semantically nonsensical, but with no ill effect. Standards of any kind, including community standards, are inanimate concepts and, consequently, are incapable of being offended. Only people can be offended. In our opinion, the definition could better be phrased as follows:

> "Patently offensive" means obviously offensive to the average member of the community.

Any standard or criterion for judging whether certain material is offensive must be qualified by the notion of what would offend the hypothetical "average person" in the community, as the trier of fact perceives him. Therefore, it would be redundant to include "current community standards" in the definition we have proposed.

We think that the "of decency" vs. "of tolerance" debate is a tempest in a teapot. No psychologically healthy person who is offended by a depiction of sexual conduct would consider that conduct decent, nor would he tolerate it. Furthermore, the distinction between the two phrases is no longer a viable issue in light of *Andrews v. State,* 652 S.W.2d 370 (Tex.App.1983).

■■■ Bearing in mind the framework for overbreadth analysis we have previously discussed, we believe the definition of "patently offensive" in § 43.21(a)(4) is constitutionally valid. When § 43.21 is read as a whole, and particularly when § 43.-21(a)(1)(B) is read with 43.21(a)(4), the effect of the statute on potentially protected speech is not real or substantial. In addition, when our narrowing interpretation of § 43.21(a)(4) is taken into account, the definition of "patently offensive" is not over-

broad. *See Erznoznik v. City of Jacksonville,* 422 U.S. 205, 95 S.Ct. 2268, 45 L.Ed.2d 125. Appellant's third ground of error is overruled.

## THE DEFINITION OF "PROMOTE" IN § 43.21(a)(5)

In his fourth ground of error, Appellant maintains the trial court erred in overruling his motion to quash the information in that the definition of "promote" contained in TEX.PENAL CODE ANN. § 43.21(a)(5) (Vernon Supp. 1982–1983) is unconstitutionally overbroad on its face. The provision states:

> (5) "Promote" means to manufacture, issue, sell, give, provide, lend, mail, deliver, transfer, transmit, publish, distribute, circulate, disseminate, present, exhibit, or advertise, or to offer or agree to do the same.

Appellant argues that this definition, when read in conjunction with the statutory definitions of obscene materials and obscene devices, could punish pure speech in numerous hypothetical circumstances. He contends that although theoretically the mere agreement to lend obscene material could be a criminal act, the marital and medical uses of such material are protected by the right of privacy.

 The information in this case described promote as "sell, issue, transfer, deliver and provide." The jury charge stated that " 'promote' means to issue, sell, provide, deliver, or transfer," using substantially fewer infinitives than are contained in the statutory definition. No marital, medical, or other exception exists in this case. *See Porter v. State,* 638 S.W.2d 249, 252 (Tex.App.—Ft. Worth 1982), *rev'd on other grounds sub nom. Davis v. State,* 658 S.W.2d 572 (Tex.Cr.App.1983). Since Appellant was not actually prosecuted under one of the protected hypothetical circumstances, he has no standing to complain of the statutory definition. *Gaffney v. State,* 575 S.W.2d at 541; *Red Bluff Drive-*

*Inn, Inc. v. Vance,* 648 F.2d at 1030. Ground of error four is overruled.

## THE PRESUMPTIONS CREATED BY § 43.23(e) and (f)—STANDING TO CHALLENGE THEIR VALIDITY

In his fifth ground of error, Appellant challenges the constitutionality of the presumptions created in TEX.PENAL CODE ANN. § 43.23(e)[1] and (f) (Vernon Supp. 1982–1983) which state:

> (e) A person who promotes or wholesale promotes obscene material or an obscene device or possesses the same with intent to promote or wholesale promote it in the course of his business is presumed to do so with knowledge of its content and character.

> (f) A person who possesses six or more obscene devices or identical or similar obscene articles is presumed to possess them with intent to promote the same.

Appellant contends that by the application of either presumption individually, or by combining the two provisions, the State's burden of alleging and proving scienter is satisfied by the mere possession of obscene material, resulting in a violation of his First, Fifth and Fourteenth Amendment rights. He relies on *Smith v. California,* 361 U.S. 147, 80 S.Ct. 215, 4 L.Ed.2d 205 (1959).

 The charge of the trial court did not refer to either presumption created by § 43.23, but instead contained instructions on knowledge and circumstantial evidence. As we have previously stated, absent any application of § 43.23 to Appellant, he has no standing to challenge its constitutionality. His fifth ground of error is overruled.

## THE VALIDITY OF THE AFFIDAVIT UNDERLYING THE INFORMATION

Appellant's sixth ground of error contains the assertion that the trial court erred in failing to sustain his motion to quash the

---

**1.** In *Davis v. State,* 658 S.W.2d 572 (Tex.Cr.App. 1983) (not yet reported), § 43.23(e) was held unconstitutional.

information. He contends the underlying affidavit of Officer Thompson merely stated conclusions, omitting facts from which a magistrate could make an independent determination of probable cause before issuing the warrant for his arrest. It is apparent to us that Appellant is mistaken in several respects.

In the first place, an information need only be based upon a sworn complaint "by some credible person" other than the prosecutor. *Wells v. State*, 516 S.W.2d 663, 664 (Tex.Cr.App.1975); TEX. CODE CRIM.PROC. art. 21.22 (Vernon 1966). The complaint is in the form of an affidavit, and the complainant is the affiant. TEX.CODE CRIM.PROC. art. 15.04 (Vernon 1977). Therefore, it is the complaint alone, and not any other affidavits given in support of arrest or search warrants, which determines the validity of the information. *Holland v. State*, 623 S.W.2d 651 (Tex.Cr.App.1981). The standard for judging the sufficiency of a complaint underlying an information is different from, and less stringent than, that which applies to affidavits forming the basis of arrest or search warrants. *Wells v. State*, 516 S.W.2d at 664; *Aguirre v. State*, 416 S.W.2d 406, 407 (Tex.Cr.App.1967). Article 15.05 of the Code of Criminal Procedure lists the requisites of a sufficient complaint, and the document in the case at bar complies with all of them. We overrule Appellant's sixth ground of error.

## SUFFICIENCY OF EVIDENCE TO SHOW "PROMOTION"

In his seventh ground of error, Appellant contends the evidence was insufficient to prove he "promoted" allegedly obscene material in violation of TEX.PENAL CODE ANN. § 43.23(c) (Vernon Supp.1982–1983). The jury charge contained a paragraph concerning knowledge and, as we have said, also stated that " 'promote' means to issue, sell, provide, deliver or transfer."

Testimony of Officer Thompson established the fact that Appellant interrupted a telephone conversation to authorize the clerk to exchange the VHS cassettes for Betamax types. Furthermore, Appellant told Officer Thompson he had purchased the wrong cassettes and that he should buy the Betamax types with a blue label on a nearby rack. Another newsstand employee, Julie Willis, assisted Officer Thompson in the exchange. The State introduced additional testimonial and documentary evidence which established Appellant's ownership of the Bellaire News Stand and the business' sponsorship of a newspaper advertisement for the film, "Barbara Broadcast."

The court gave a charge on the law of the parties under TEX.PENAL CODE ANN. § 7.02 (Vernon 1974), in addition to giving instructions concerning knowledge and circumstantial evidence. Section 7.02 states in pertinent part:

(a) A person is criminally responsible for an offense committed by the conduct of another if:

\* \* \* \* \* \*

(2) acting with intent to promote or assist the commission of the offense, he solicits, encourages, directs, aids, or attempts to aid the other person to commit the offense.

In *Acevedo v. State*, 633 S.W.2d 856 (Tex.Cr.App.1982), a concessionaire at a movie theater which exhibited obscene films was found to be outside the reach of § 43.23. The court held that a person who sells refreshments may not be prosecuted under the obscenity statutes because he is engaged in conduct "merely incidental to the *exhibition* of obscenity." 633 S.W.2d at 859 (emphasis in original). It is implicit in *Acevedo*, however, that a showing of activity which is more than "incidental" to a violation under the statute would permit a prosecution. The direct and circumstantial evidence in the case at bar amply prove that Appellant knew the content of "Barbara Broadcast" and directly or through accomplice liability participated in its promotion.

Having found no error, we affirm the judgment of the trial court.

**OPINION ON MOTION FOR
REHEARING**

Appellant contends that we erred in failing to make an independent evaluation of whether "Barbara Broadcast" is obscene. He cites *Andrews v. State*, 652 S.W.2d 370 (Tex.Cr.App.1983); *Longoria v. State*, 479 S.W.2d 689 (Tex.Cr.App.1972); *Hunt v. State*, 475 S.W.2d 935 (Tex.Cr.App.1972), as authority for the proposition that notwithstanding a jury verdict finding certain material to be obscene, an appellate court must always reconsider the material.

In *Davis v. State*, 658 S.W.2d 572 (Tex. Cr.App.1983), the most recent pronouncement of the Court of Criminal Appeals on this issue, the court stated:

> (a)ppellate review of what is alleged to be obscene material comes into play *only if there is an issue raised in the trial court or the appellate court that the material is not obscene, either factually or constitutionally.*

*Id.* at 582 (citation omitted) (emphasis in original).

■ Appellant has not made an issue of the sufficiency of the evidence in this court, either in his grounds of error or in his motion for rehearing. He merely asserts that we are, in all instances, obliged to make an independent determination of whether the material is obscene. We disagree, and under the authority of *Davis v. State*, we decline to do so.

Motion for rehearing overruled.