**David Gary HOOVER, Petitioner-Appellant,**

v.

**Don BYRD, Sheriff of Dallas County Texas, Respondent-Appellee.**

No. 85–1647.

United States Court of Appeals, Fifth Circuit.

Oct. 6, 1986.

Rehearing and Rehearing En Banc Denied Nov. 4, 1986.

Malcolm Dade, Dallas, Tex., for petitioner-appellant.

Henry J. Voegtle, Asst. Dist. Atty., Henry Wade, Dist. Atty., Federal Section, Dallas, Tex., for respondent-appellee.

Before WISDOM, DAVIS, and JONES, Circuit Judges.

EDITH HOLLAN JONES, Circuit Judge:

The only issue presented for review in this habeas corpus proceeding is whether the Texas Obscenity Statute, Texas Penal Code Annotated, Section 43.21, defines the term "patently offensive" in a manner inconsistent with the First Amendment. The petitioner alleges that the jury in his commercial obscenity criminal trial was improperly charged according to the erroneous statutory definition. We find, after further reflection on this issue which we have previously declined to consider, that the statutory definition passes constitutional muster.

The Supreme Court, in *Miller v. California*, 413 U.S. 15, 93 S.Ct. 2607, 37 L.Ed.2d 419 (1973) sought to re-examine the "standards enunciated in earlier cases involving what Mr. Justice Harlan called 'the intractable obscenity problem.' *Interstate Circuit, Inc. v. Dallas*, 390 U.S. 676, 704, 88 S.Ct. 1298, 1313, 20 L.Ed.2d 225, 243 (1968) (concurring and dissenting.) The Court set forth basic criteria for instructing the trier of fact concerning constitutionally unprotected obscenity as follows:

    (a) Whether "the average person, applying contemporary community standards" would find that the work, taken as a whole, appeals to the prurient interest;

    (b) whether the work depicts or describes, in a patently offensive way, sexual conduct specifically defined by the applicable state law; and

    (c) whether the work, taken as a whole, lacks serious literary, artistic, political, or scientific value.

*Miller*, 413 U.S. at 24, 93 S.Ct. at 2614. Providing examples of such obscenity which could be regulated by the states, the Court described "patently offensive" representations of ultimate sexual acts, normal or perverted, actual or simulated, and "patently offensive" representations or descriptions of masturbation, excretory functions, and lewd exhibition of the genitals. *Id.* at 25, 93 S.Ct. at 2615. The Court emphasized that under our federal system, there neither should nor can be fixed, uniform national standards of what appeals to the "prurient interest" or is "patently offensive." "To require a state to structure obscenity proceedings around evidence of a *national* "community standard" would be an exercise in futility." *Id.* at 30, 93 S.Ct. at 2618 (emphasis in the original).

Relying upon the *Miller* decision, which garnered a clear majority of the Court, the Texas legislature amended its obscenity statute in 1979. In pertinent part, the statute defines "patently offensive" as "so offensive on its face to affront current community standards of decency." Tex.Penal Code Ann. § 43.21(a)(4). The statute re-lates this definition to specific depictions of lewd sexual conduct like those enumerated above.

Petitioner's argument hinges on whether "patently offensive" material can be defined in terms of "community standards of decency." According to petitioner, this one-word modification extends the reach of regulated obscenity beyond "community standards of toleration," which petitioner would support as the only constitutionally appropriate standard. As legal support for this formulation, petitioner draws upon one sentence in each of two Supreme Court opinions:

    "It is neither realistic nor constitutionally sound to read the First Amendment as requiring that people of Maine or Mississippi accept public depiction of conduct found *tolerable* in Las Vegas or New York City." *Miller v. California*, 413 U.S. at 32, 93 S.Ct. at 2619 (emphasis added).

    "Similarly, obscenity is to be judged according to the average person in the community, rather than the most prudish or the most *tolerant.*" *Smith v. U.S.*, 431 U.S. 291, 304, 97 S.Ct. 1756, 1766, 52 L.Ed.2d 324 (1977) (emphasis added).

    Petitioner's argument amounts to semantic shadow-boxing. We do not believe that the Texas legislature intended any deviation, glaring or subtle, from the standards announced in *Miller v. California*. As a matter of proper English usage, which informs our decision where, concededly no legal term of art is involved, petitioner's argument is meritless. Webster's Third New International Dictionary defines "standard" as "something established by authority, custom or general consent as a model or example to be followed." The same dictionary defines "decency" in terms of "conformity to standards of taste, propriety or quality." Thus, if anything, the Texas legislative gloss upon the *Miller* standard is simply redundant. On the other hand, Petitioner's insistence that "tolerance" must be substituted for "decency" affronts the notion of "standards," because tolerance embodies the permissible *devia-*

*tions* from standards. As was shown above, the *Miller* definition of obscenity, taken as a whole, narrowly circumscribes the arena of state regulation to depictions or descriptions of sexual conduct which per se deviate from those of the community at large. Moreover, as *Miller* and *Smith* emphasize, obscenity is to be judged by *community* standards, which requires the jury to consider the average person rather than the most prudish or most tolerant. *Smith, supra.* To incorporate a requirement of "tolerance" within the definition of "community standards" not only turns the notion of standards upside down, but it also undermines the goal of *Miller* to permit differing levels of obscenity regulation in such diverse communities as Kerrville and Houston, Texas. Most pertinently, in *Miller,* the Supreme Court noted, apparently with approval, that the state court jury had been instructed to determine whether the material "goes substantially beyond customary limits of candor and affronts contemporary community standards of decency." *Miller,* 413 U.S. at 31, 93 S.Ct. at 2618 (emphasis added). We find no compelling semantic support nor compulsory legal requirement for petitioner's position. *See also Olson v. Leeke,* 744 F.2d 1061 (4th Cir.1984), *cert. denied,* 471 U.S. 1053, 105 S.Ct. 2112, 85 L.Ed.2d 477 (1985) (upholding South Carolina statute with similar language).

This Court previously declined to review the facial constitutionality of this portion of the Texas obscenity statute in *Red Bluff Drive Inn, Inc. v. Vance,* 648 F.2d 1020, 1029 (5th Cir.1981) *cert. denied,* 455 U.S. 913, 102 S.Ct. 1264, 71 L.Ed.2d 453 (1982). While expressing some concern, we abstained to permit interpretation of the "critical word" by the Texas courts. 648 F.2d at 1029. The lower state courts, confronted with specific application of this statute, initially disagreed, but the Court of Criminal Appeals definitively approved the legislative wording in *Andrews v. State,* 652 S.W.2d 370, 381 (Tex.Crim.App.1983):

> We conclude that the statutory definition for the term "patently offensive" passes constitutional muster because in context within the statute, the word "decency" actually states a common meaning of what governs "current community standards." i.e., whether to the average person the material . . . is so offensive on its face as to affront current community standards of propriety.

Likewise, the wisdom of the abstention doctrine has been vindicated, because both the Texas Court of Criminal Appeals and this Court have now had the opportunity to consider the interpretation of the statutory provision in the context of its specific application. We are, with the intermediate Texas court in *Gholson v. State,* 667 S.W.2d 168 [Tex.App.—Houston [14th] 1983, writ ref'd] inclined to conclude that this argument is a "tempest in a tea pot."

The judgment of the trial court is AFFIRMED.