Robert Ray YOUNG, a/k/a Robert Hook, Appellant,

v.

The STATE of Texas, Appellee.

No. 07–88–0277–CR.

Court of Appeals of Texas, Amarillo.

Aug. 11, 1989.

Dennis Reeves, Lubbock, and Jeffrey M. Gamso, Toledo, Ohio, for appellant.

Travis Ware, Dist. Atty. and Michael West, Asst. Dist. Atty., Lubbock, for appellee.

Before REYNOLDS, C.J., and DODSON and BOYD, JJ.

BOYD, Justice.

In six points of error appellant Robert Ray Young, a/k/a Robert Hook attacks his conviction for engaging in organized crimi-

nal activity. Based upon that conviction, the jury assessed his punishment at ninety-nine (99) years confinement in the Department of Corrections. In his six points, appellant says: (1) the trial court erred in allowing the State to amend the indictment by removing thirteen (13) overt acts charged by the grand jury; (2) the trial court erred in denying appellant's second amended motion to quash amended indictment; (3) the trial court erred in charging the jury only on those overt acts alleged in the amended indictment; (4) telephone conversation evidence was erroneously admitted because it was obtained by virtue of a telephone intercept order based upon an improper affidavit; (5) the trial court erred in denying appellant's motion to suppress evidence derived from an illegal arrest, search, and seizure; and (6) because it abridges the constitutional right to freedom of association, Tex.Penal Code Ann. §§ 71.01–71.05 (the Organized Crime Statute), is unconstitutional. Disagreeing with appellant's contentions, we affirm his conviction.

■ Appellant presents and argues his first three points together and, since they are so closely related, we will likewise consider them together. On May 12, 1988, the grand jury of Lubbock County returned a two-count indictment against appellant. In the first count, he was charged with possession of at least four hundred (400) grams of cocaine. In the second count, appellant was charged with sixteen overt acts allegedly committed by appellant and twenty (20) others in furtherance of a criminal conspiracy to commit the offense of unlawful delivery of cocaine.

On August 11, 1988, pursuant to Texas Code of Criminal Procedure Article 28.10, the State successfully asked to amend the original indictment by deleting the count for possession of cocaine and in the remaining count, reducing the number of co-conspirators from twenty-one to twelve[1] and the number of alleged overt acts to three. It is the allowance of this amendment by the trial court that gives rise to appellant's first three points.

The thrust of appellant's argument under these points is that by allowing the amendment, and, in its charge, by requiring the jury to find only the three acts in order to convict, the trial court reversibly erred. The effect of these acts, argues appellant, was to reduce the State's factual burden and to deprive appellant of his right to be tried on an indictment returned by a properly constituted grand jury. In support of this conclusion appellant points to the affirmative reply at trial by the foreman of the grand jury to his question whether "all those acts combined was enough facts to have these people indicted for organized crime?" This testimony, he urges, shows the practical effect of reducing the number of overt acts was to allow him to be tried and convicted on a charge different from that contemplated by the grand jury thereby depriving him of a substantial right. In advancing these arguments, appellant places primary reliance upon the holding in *Brasfield v. State*, 600 S.W.2d 288 (Tex.Crim.App.1980), that "[T]he offense so charged may not be amended, neither by reducing the facts alleged, nor by changing them, nor by adding to them." *Id.* at 302. We disagree with appellant's premise.

Texas Code of Criminal Procedure article 28.10(a),[2] as constituted at the time of trial, allowed the amendment of indictments as to matters of "form or substance" after prescribed notice. That right is limited by section (c) of the statute which provides that such an indictment may not be amended over a defendant's objection if the amended instrument "charges the defendant with an additional or different offense or if the substantial rights of the defendant are prejudiced." Since appellant duly objected to the amendment on the ground that it charged a different offense, he claims the benefit of section (c).

The offense charged in count II of the original indictment was the offense of engaging in organized criminal activity. To

---

1. Thirteen names are listed but that of Edward Fitzgerald is listed twice.

2. Sections hereinafter referred to are those sections of the Texas Penal Code Annotated.

obtain a conviction under that indictment the State must have established that (1) appellant, (2) with intent to establish, maintain, and participate in a combination, did (3) conspire to commit the offense of unlawful delivery of cocaine, a controlled substance listed in penalty one, in an amount of less than twenty-eight (28) grams. *See* Texas Penal Code Annotated § 71.02(a)(5).

Subsection (a) of section 71.01 defines an unlawful "combination" as five or more persons who collaborate in carrying on criminal activities. Subsection (b) of the section says that a person "conspires to commit" an unlawful act when that person

agrees with one or more persons that they or one or more of them engage in conduct that would constitute the offense and that person and one or more of them perform an overt act in pursuance of the agreement. An agreement constituting conspiring to commit may be inferred from the acts of the parties.

The amendment permitted by the trial court did not affect or change the elements of the offense charged. The change permitted was only related to factual allegations incident to the charge actually made and was permissible under the amended statute applicable at the time of the trial court's action. That being the case, we hold that the amendment neither charged an additional or different offense from that contemplated by the grand jury nor did it deprive appellant of a substantial right within the purview of the statute. The State was also entitled to abandon the prosecution under count I of the original indictment. *Garcia v. State,* 537 S.W.2d 930 (Tex.Crim.App.1976). Parenthetically, we note that appellant does not contend that the amendment deprived him of the requisite notice to properly prepare his defense to the charge. Since the amendment was proper, the court correctly charged the jury on only the overt acts alleged in the amended indictment. Appellant's first three points are overruled.

■ In his fourth point, appellant, for the first time, asserts that a telephone intercept order was defective because it was based upon an affidavit which contained information not within the personal knowledge of the affiant. Therefore, he argues, it was reversible error to admit evidence obtained as a result of that order. Appellant bases this point upon testimony of the affiant officer at the time of trial that "more was added to it (the affidavit) by our legal counsel." He explains he could not have included this contention in a pretrial motion to suppress because of that fact. However, appellant also failed to object on this basis when the evidence was actually tendered at trial which was subsequent to the officer's testimony.

■ It is the general rule that appellate courts will not consider any error which counsel for accused could have, but did not, call to the attention of the trial court at the time when that error could have been avoided or corrected by the trial court. That general rule also applies to errors involving constitutional rights. *Russell v. State,* 665 S.W.2d 771, 777 (Tex.Crim.App. 1983), *cert. denied,* 465 U.S. 1073, 104 S.Ct. 1428, 79 L.Ed.2d 752, *rehearing denied,* 466 U.S. 932, 104 S.Ct. 1720, 80 L.Ed.2d 192; *Rogers v. State,* 640 S.W.2d 248, 264–65 (Tex.Crim.App.1981) (opinion on State's second motion for rehearing); *Mendoza v. State,* 552 S.W.2d 444 (Tex.Crim.App.1977). Appellant's fourth point is overruled.

In his fifth point, appellant urges that the trial court erred in not suppressing, and in admitting into evidence, cocaine recovered by police officers at the Lubbock International Airport on May 3, 1988. The thrust of his contention is that the seizure of the cocaine (approximately three kilos) was the outgrowth of the execution of an improper arrest warrant. As such, he reasons, the cocaine was "fruit of the poisoned tree" and inadmissible.

This contention requires us to briefly outline the events leading to the seizure of the cocaine. As a result of surveillance and telephone intercepts, on May 2, 1988, police officials learned that several of the alleged conspirators, including appellant, had gone to California with $40,000 to purchase cocaine. They were scheduled to return to Lubbock on an America West flight

arriving in the early morning hours of May 3, 1988.

Based upon an affidavit sworn to by Christal Brooks, who was an employee of the Criminal District Attorney of Lubbock County, on May 2, 1988, Justice of the Peace L.J. Blalock issued a warrant for the arrest of the alleged conspirators, including appellant.

Armed with the arrest warrant, a surveillance and arrest team composed of both uniformed and plainclothes officers proceeded to the terminal and prepared to execute the warrant. Appellant and one other suspect were the first ones off the plane. They were arrested and placed face down in front of the ticket agent's counter to the side of the rampway used by the deplaning suspects. Other passengers then deplaned and the two other suspects were arrested. Napoleon Ansley, carrying a brown bag over his shoulder, was the last of the group to deplane. In the words of arresting officer Matthews, who observed the action, "as soon as he got near the door, he could see where we have the other people. And he was just walking and all of a sudden he just sat the bag down and continued walking. He never missed a stride." The bag was located just inside the door of the jetway upon which the passengers were deplaning. An examination of the bag produced the cocaine in question here.

The requisites of warrants and complaints in this State are set out in Chapter 15 of the Texas Code of Criminal Procedure Article 15.05(2) which requires that the complaint "must show that the accused has committed some offense against the laws of the State, either directly or that the affiant has good reason to believe, and *does believe*, that the accused has committed such offense." (Emphasis added).

█ The affiant in the complaint did not purport to have personal knowledge of the offense and, while she asserts she has good reason to believe such an offense occurred, she does not state that she "does believe" that the accused committed an offense. It is well established that the requirement that an affiant state that he or she "does believe" that an accused committed an offense is a statutory requirement and its absence vitiates a complaint. *Barnes v. State*, 363 S.W.2d 471, 471 (Tex. Crim.App.1963); *Betels v. State*, 145 Tex. Crim. 368, 168 S.W.2d 499 (1943); *Self v. State*, 143 Tex.Crim. 39, 156 S.W.2d 526 (1941); *Ward v. State*, 119 Tex.Crim. 48, 21 S.W.2d 297 (1929); *Smith v. State*, 103 Tex.Crim. 228, 280 S.W. 581 (1926); *Smith v. State*, 45 Tex.Crim. 411, 76 S.W. 436 (1903). Even in the case of an informant, the underlying complaint which is judged by less stringent standards than in the case of a felony complaint, *Wells v. State*, 516 S.W.2d 663, 664 (Tex.Crim.App.1975), it is the complaint alone and not any other affidavits given in support of arrest or search warrants which determines the validity of the information. *Gholson v. State*, 667 S.W.2d 168, 177 (Tex.App.—Houston [14th Dist.] 1983, pet. ref'd) (citing *Holland v. State*, 623 S.W.2d 651 (Tex.Crim.App. 1981)). It is also established that the standard for judging the sufficiency of a complaint underlying an information is different from, and less stringent than, that which applies to affidavits forming the basis of arrest or search warrants. *Id.* Since information based upon an invalid complaint is fatally defective, *Baldauf v. State*, 456 S.W.2d 136, 137 (Tex.Crim.App. 1970), under less stringent standards, it follows that the instant complaint does not contain the proper statutory requisites to support the arrest warrant.

█ However, our inquiry does not end with that holding. Appellant concedes that the warrant in question is facially valid. As appellant recognizes, the general rule today both by case law and in Texas, by statute, is that when police officers act in good faith reliance on a facially valid warrant issued by a neutral magistrate and based on probable cause, evidence they obtain will be admissible even if the warrant proves invalid. *United States v. Leon*, 468 U.S. 897, 104 S.Ct. 3405, 82 L.Ed.2d 677 (1984); *Gilmore v. State*, 666 S.W.2d 136, 143 (Tex.App.—Amarillo 1983, pet. ref'd); Tex.Code Crim.Proc.Ann. art. 38.23(b) (Vernon Supp.1989).

We must, therefore, decide whether the evidence in this case justifies an exception to that general rule. That question must be decided in light of the Federal Supreme Court's conclusion in the *Leon* case "that suppression of evidence obtained pursuant to a warrant should be ordered only on a case-by-case basis and only in those unusual cases in which exclusion will further the purposes of the exclusionary rule." 468 U.S. at 918, 104 S.Ct. at 3418.

In this case, appellant does not argue that the officers illegally executed a facially valid warrant. Rather, he argues, the District Attorney fraudulently obtained a facially valid warrant "and must, therefore, be estopped from using the good faith of the police as a *post facto* excuse for his own misfeasance."

The objective good faith rule explicated in *Leon* is that

> [i]n the absence of an allegation that the magistrate abandoned his detached and neutral role, suppression is appropriate only if the officers were dishonest or reckless in preparing their affidavit or could not have harbored an objectively reasonable belief in the existence of probable cause.

468 U.S. at 926, 104 S.Ct. at 3422.

In a well-reasoned decision, the Dallas Court of Appeals, applied the *Leon* holding to suggest that in a case such as the instant one, suppression of the evidence would be appropriate only under one or more of four conditions. Those are that (1) the affidavit misled the issuing magistrate by stating some falsehood that the affiant either knew was false or asserted with a reckless disregard for the truth, (2) there is a well-founded allegation that the magistrate wholly abandoned his detached and neutral judicial role, (3) the affidavit is so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable, or (4) the warrant is facially deficient. *See Adams v. State*, 683 S.W.2d 525, 530 (Tex.App.—Dallas 1984, pet. ref'd).

We have found nothing, nor does appellant point out anything, in the record showing a fraud on the part of the District Attorney in obtaining the arrest warrant. Fraud, then, if it existed, must have been on the part of the affiant. Testimony at the pretrial hearing shows that affiant's source for her information was Clay Abbott, an Assistant Criminal District Attorney in Lubbock who was monitoring the wiretap. The question, then, is whether, in making the affidavit, the affiant stated some falsehood that she either knew was false or with a reckless disregard for the truth.

Appellant acknowledges that a complaint may be based upon hearsay. He suggests, however, that such a complaint must satisfy the two-prong test of *Aguilar v. Texas*, 378 U.S. 108, 84 S.Ct. 1509, 12 L.Ed.2d 723 (1964). That test required, first, that there be a showing of underlying circumstances from which the informant concluded a crime had been committed. Parenthetically, appellant concedes that the complaint in this cause satisfied that first prong. Second, *Aguilar* required a showing of underlying circumstances from which the affiant concluded the informant credible. It is in this area that appellant must claim the complaint is deficient.

In *Illinois v. Gates*, 462 U.S. 213, 103 S.Ct. 2317, 76 L.Ed.2d 527, *rehearing denied*, 463 U.S. 1237, 104 S.Ct. 33, 77 L.Ed.2d 1453 (1983), the Supreme Court relaxed the strict two-prong test of *Aguilar*, requiring, rather, that the magistrate issuing a warrant make a practical, common sense decision from all of the circumstances set before him, including the veracity of the affiant that an offense had been committed. The *Gates* analysis has been adopted in this State. *See Eisenhauer v. State*, 754 S.W.2d 159, 164 (Tex.Crim.App.), *cert. denied*, —— U.S. ——, 109 S.Ct. 127, 102 L.Ed.2d 101 (1988).

The fact that in the complaint the affiant stated that she had good reason to believe that an offense had occurred, stating detailed reasons giving rise to that belief without specifically revealing the person from whom that information was obtained, does not amount to the deliberate falsehood or reckless misstatements of fact contemplated by the *Leon* court and sufficient to

prevent a magistrate from making a proper decision. *See Adams v. State,* 683 S.W.2d at 530.

We conclude, therefore, that the *Leon* conditions for suppression of the evidence have not been met in this case. We conclude that the officers in this case acted with objective good faith and in reliance upon a facially valid warrant. It follows, and we hold, that under the circumstances of this case, the exclusionary rule should not be applied to bar the use of the cocaine.

 Moreover, we agree with the State that the bag containing the cocaine was abandoned and was, therefore, lawfully seized. In *Comer v. State,* 754 S.W.2d 656 (Tex.Crim.App.1986), the court made it clear that abandonment consists of two components: (1) a defendant must intend to abandon property, and (2) a defendant must freely decide to abandon the property; the decision must not merely be the product of police misconduct. *Id.* at 659. It is uncontroverted that Ansley placed the bag down and walked away from it when he saw his alleged co-conspirators approached by the police. The intent was obvious, and the police were not where they were as a result of police misconduct. Both elements of the abandonment test are met. Appellant's fifth point is overruled.

 In his sixth point, appellant challenges the constitutionality of the Organized Crime Statute, Texas Penal Code Annotated sections 71.01–71.05. The thrust of his challenge is that the statute violates the constitutionally protected right to freedom of association under the First Amendment in the United States Constitution and Texas Constitution article I, section 27. Parenthetically, we note that although appellant did not raise this challenge at the trial level, the State does not contest his right to raise it on appeal. That being the case, we will consider and discuss it.

The First Amendment to the United States Constitution, applied to the States through the Fourteenth Amendment, prohibits, *inter alia,* laws infringing on "the right of the people peaceably to assemble." The Texas Bill of Rights, enacted as Article I of the Texas Constitution, includes the statement that "the Citizens shall have the right, in a peaceable manner, to assemble together for their common good." Tex. Const. art. I, § 27.

Appellant concedes that the assembly provisions of both constitutions, as constitutional provisions regarding freedom of speech, are subject to limitations based on time, place, and manner. *See, e.g., Grayned v. City of Rockford,* 408 U.S. 104, 115–16, 92 S.Ct. 2294, 2302–03, 33 L.Ed.2d 222 (1972); *Iranian Muslim Organization v. City of San Antonio,* 615 S.W.2d 202, 205 (Tex.1981). He also concedes the propriety of limitations based on extraordinary risks of public safety, on "clear and present danger." *Schenck v. United States,* 249 U.S. 47, 52, 39 S.Ct. 247, 249, 63 L.Ed. 470, 473 (1919).

The thrust of appellant's attack is that the legislature has no right to limit freedom of association because of a perceived possibility of risk to public safety. Acknowledging that he could properly have been prosecuted for trafficking in controlled substances or even for conspiring to do so, appellant contends, however, that no one may be prosecuted for combining with others for the purpose of "collaborating" in a criminal activity. Since, he argues, the statute criminalizes the fact of the combination, of the association itself, it is constitutionally impermissible. We disagree.

While appellant's argument is facially intriguing, it is conceptually flawed. The right of assembly constitutionally protected is the right of association for peaceful purposes: in the United States Constitution, "peaceably to assemble, and to petition the government for a redress of grievances;" and in the Texas Constitution, "to assemble together for their common good[,] and apply to those invested with the powers of government for redress of grievances or other purposes, by petition, address or remonstrance." Those assemblies are for purposes essentially peaceable, for the exercise of free speech, and for redress of actual or perceived indignities.

While it might be argued that what constitutes a "peaceable" assembly or an as-

sembly for "common good" is in the eye of the beholder and defined differently by a member of the Klu Klux Klan or a member of the American Civil Liberties Union, the State, by the exercise of its police power, may prohibit assemblies which, instead of promoting the common good or a right of peaceable redress, clearly exist solely for the purpose of harming or disrupting that "common good." However, that right to prohibit must be limited in nature, be strictly construed, and must concern only assemblies and associations which, beyond cavil, threaten the public peace and well being.

The statute in question survives any such scrutiny. First, it does not purport to punish participation in a combination or combinations generally. It punishes only combinations for the purpose of conspiring to commit, or to commit, certain specified and limited criminal objectives. Those objectives are clearly delineated in the statute. None of these punishable objectives could be related to the common good or accomplish redress for grievances or grievances within any reasonable purview of the constitutional provisions in question. They are clearly criminal in nature.

In *McDonald v. State*, 692 S.W.2d 169, 172 (Tex.App.—Houston [1st Dist.] 1985, pet. ref'd), with the comment that the statute represents the legislature recognition that organized criminal activity is more dangerous to the welfare of the state than unorganized activity, and is an obvious attempt to discourage and deter organized criminal activity within the state, the court held the statute reaches only those persons who knowingly engage in criminal activity. We join in that observation and conclusion with the additional holding that the criminal activity prohibited in the statute under consideration, represents a legitimate exercise of the police power of the state. Succinctly stated, the statute does not limit freedom of assembly for constitutional purposes; it penalizes associations for accomplishment of specified criminal activities. The difference is material; the statute is permissible. Appellant's sixth point is overruled.

In summary, all of appellant's points are overruled and, there being no reversible error, the trial court judgment is affirmed.