Lois Rosalyn **GOODMAN** and Kathryn Voorhees Spiegel, Appellants,

v.

The **STATE** of Texas, Appellee.

Nos. 68804, 68805.

Court of Criminal Appeals of Texas, En Banc.

Feb. 29, 1984.

Rehearing Denied April 18, 1984.

---

**136**

Marian S. Rosen, Allison J. Snyder, Houston, for appellants.

John B. Holmes, Jr., Dist. Atty. and Alvin M. Titus, Timothy G. Taft, and Eric Hagstette, Asst. Dist. Attys., Houston, Robert Huttash, State's Atty., Austin, for the State.

## OPINION

CLINTON, Judge.

These are appeals from convictions for promotion of obscenity. A jury found appellants guilty and the court assessed punishment at a $350.00 fine.

Though appellants present 38 grounds of error for our consideration, we need reach but one, wherein appellants challenge the sufficiency of the evidence.[1] After reviewing the record, we have concluded that no rational trier of fact could have found appellants guilty of the allegations of the information. *Jackson v. Virginia,* 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); *Acevedo v. State,* 633 S.W.2d 856 (Tex.Cr.App.1982).

On October 16, 1979, Officers Hayden and Price of the Houston Police Department investigated the Cinema West Theatre for violations of the Texas Obscenity Laws. After purchasing tickets at a booth inside the theatre from Appellant Spiegel, the officers watched two movies, titled "Pro Ball Cheerleaders" and "John Holmes Superstar." Officer Hayden recorded descriptions of the films into a tape recorder. On the basis of Officer Hayden's affidavit, a magistrate issued a warrant authorizing the officers to seize the films and to arrest the person or persons exhibiting the films.

That evening, vice officers returned to Cinema West, where a second cashier (Appellant Goodman) was standing behind the ticket booth. The officers approached her with the warrants, whereupon the projectionist, who was also behind the counter, fled to the projection booth. The police followed him and told him they were seizing the films. Subsequently the projectionist rewound the films so the officers could transport them. The projectionist was not arrested. When asked who was in charge of the theatre, Goodman said she was in charge of the cash register.

Appellant Goodman testified she started working at Cinema West while she was attending the University of Houston. She started as cashier and later became a manager. The night the film was seized, she was cashiering and her duties included selling concessions and tickets, although she did not sell tickets to the police officers. She stated she had never seen the films, although she knew they were x-rated, and she had seen a preview of "Pro Ball Cheerleaders." Goodman had nothing to do with the exhibition of the film.

Appellant Spiegel testified she occasionally worked as cashier at Cinema West to help out her husband, who was president

---

1. Appellants raise a constitutional question concerning Texas Penal Code, Sec. 43.23(e) and (f), but we will not determine the constitutionality of a statute unless necessary to decide the case in which issue is raised.

and stockholder of Theatres West, Inc. and Five Star Films, Inc.[2] While she knew x-rated films were shown at the theatre, she did not know the character and content of the films in question. Spiegel had nothing to do with the exhibition of the films.

■ Appellants were charged with intentionally promoting obscene material by exhibiting the film "Pro Ball Cheerleaders" while knowing its content and character.[3] The State failed to prove that either appellant "exhibited" the film "Pro Ball Cheerleaders." In Appellant Spiegel's case, the State relies on her act of selling tickets to the officers to prove she promoted the film by exhibiting it. However, those who merely stand behind a counter and sell tickets are not "exhibiting" a film.[4] Accord: *Acevedo v. State*, supra. Further, there was no showing Spiegel had anything to do with the operation of the movie projector or the selection of or the showing of films at the theatre. *Skinner v. State*, 652 S.W.2d 773 (Tex.Cr.App.1983).

■ The same holds true in Appellant Goodman's case, with the added fact that she *did not* sell a ticket to the officers. Goodman did testify that she was a "manager," but her duties on the night in question consisted solely of selling tickets and concessions. Not knowing what a manager's duties are, we decline to leap to the conclusion that she had anything to do with

the "exhibition" of the film when there is absolutely no evidence to this effect.

We conclude that no rational trier of fact could have found that appellants promoted the film by exhibiting it. Therefore, these causes are remanded to the trial court with orders to enter judgments of acquittal. *Burks v. United States*, 437 U.S. 1, 98 S.Ct. 2141, 57 L.Ed.2d 1 (1978); *Greene v. Massey*, 437 U.S. 19, 98 S.Ct. 2151, 57 L.Ed.2d 15 (1978).

ODOM, W.C. DAVIS and MILLER, JJ., dissent to reversal in No. 68804.

---

2. We note that Mr. Spiegel volunteered to be arrested in lieu of Spiegel and Goodman, but the police declined to arrest him. He went so far as to offer to sell the police a ticket if that was necessary for him to be arrested. In fact, Mr. Spiegel testified he met with the police and they told him they did not want the person in charge; rather, they wanted the person who sold the tickets. R.K. Hanson at the District Attorney's Office was contacted to see if Hanson could convince the police to arrest Spiegel in lieu of the appellants, all to no avail.

3. The information against appellants reads in pertinent part:
   "[Defendants] did then and there unlawfully and intentionally promote obscene material, namely, one film entitled 'Pro Ball Cheerleaders,' by exhibiting said film knowing the content and character of the material."
   Section 43.21(a)(5) defines "promote" as follows:

"'Promote' means to manufacture, issue, sell, give, provide, lend, mail, deliver, transfer, transmit, publish, distribute, circulate, disseminate, present, exhibit, or advertise, or to offer or agree to do the same."

4. We note that V.T.C.A. Penal Code, Sec. 1.05 states that provisions of the code are to be construed "according to the *fair import* of their terms, to promote justice and effect the objectives of this code. (Emphasis added) Additionally, Sec. 2.01 of the Code Construction Act, art. 5429b–2, V.A.T.S., provides that words contained in the penal code are to be construed "according to the rules of grammar and common usage."

A standard dictionary, Webster's Third International (1961) defines "exhibit" as to show or display publicly. As discussed above, the State did not prove appellants promoted the film through exhibiting it.