**Thomas Scott BRADY, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 13–89–054–CR.**

Court of Appeals of Texas, Corpus Christi.

Oct. 18, 1990.

Glen A. Barnard, Harlingen, for appellant.

John A. Olson and Luis V. Saenz, Brownsville, for appellee.

Before NYE, C.J., and KENNEDY and DORSEY, JJ.

OPINION

NYE, Chief Justice.

A jury found appellant guilty of promoting and possessing obscene material. The trial court assessed punishment at a fine of $400.00 and confinement for 60 days in the county jail. By one point of error, appellant challenges the sufficiency of the evidence to support the conviction. We affirm the judgment of the trial court.

Appellant was accused of promoting and possessing with intent to promote an obscene motion picture entitled "Working Girls." Appellant asserts only that the evidence fails to show that he promoted the film or knew its content and character. He does not argue nor contend that the material itself was not obscene.

In reviewing the sufficiency of the evidence on this sole point of error, the court of appeals must view the evidence in the light most favorable to the trial court's judgment to determine whether any rational trier of fact could have found this essential element of the offense beyond a reasonable doubt. *Baugh v. State*, 776 S.W.2d 583, 585 (Tex.Crim.App.1989); *Moreno v. State*, 755 S.W.2d 866, 867 (Tex. Crim.App.1988); *Castillo v. State*, 739 S.W.2d 280, 287 (Tex.Crim.App.1987). A defendant's knowledge of the character and content of obscene material can be proven by circumstantial or direct evidence. *Carroll v. State*, 701 S.W.2d 913, 914 (Tex. Crim.App.1986); *Davis v. State*, 658 S.W.2d 572 (Tex.Crim.App.1983).

The evidence shows that police officer Jose Morales went to the Citrus Drive–In Theater, where the marquee advertised two movies: "Beverly Hills Cox" and "Working Girls." Morales purchased a ticket and parked his car where he could see Marlin Hankin working in the projection room.[1] Officer Morales viewed

---

1. Marlin Hankin and appellant were jointly    tried and found guilty. This court affirmed

the two advertised movies in their entireties. While viewing the movies, Morales observed that appellant thrice left the concession stand where he was working and went to the theater projection room. Appellant remained inside the room for several minutes during each visit, although the record does not indicate what appellant did there. The officer left the theater after the movies ended.

Subsequently, on an evening while the two movies were still showing, Morales, accompanied by Detective Garza, returned to the theater to execute a search warrant. Morales served a copy of the warrant on Hankin while he was in the projection room. Garza served a copy of the warrant on appellant at the concession stand and then escorted him to the projection room.

On his arrival at the projection room, appellant instructed Hankin to "break down" the movies. "Break down" is a term which apparently describes reducing a movie from the large reels feeding into the projector to several smaller reels for easier storage and shipment. Once the film was dismantled and placed on the smaller reels, appellant "got ties" and, according to Morales, "just set those up."

While Morales waited for Hankin and appellant to break down the movies, he looked at some pieces of film lying on the projection room floor. The testimony indicates that the smaller shipment-sized reels are cut and spliced into one larger reel for viewing. Thus, bits of film will be severed from the movie and often remain in the projection room. Morales testified that appellant said, "if I was looking for pieces of film that had been cut from the movie that [I] should have gotten them the first time because they were not there anymore."

Morales testified at trial that appellant was the manager of the theater. No objection was made to this assertion. Officer Morales had worked at the theater in the past and knew both the appellant and Hankin. Morales stated that when he worked at the theater, appellant brought in workers and supplies and gave orders. He further testified, without any objection, that

Hankin's conviction on March 7, 1990, in an

he always knew that the theater belonged to the Brady family and that appellant runs the theater. On the night that Morales served the warrant, the only managerial order appellant gave was to "break down" the film.

To show that appellant was an owner of the theater, the State introduced articles of incorporation for "Brady's Citrus Drive–In, Inc.," which identified Tommy, Jacqueline, and Scott Brady as the incorporators. Appellant did not testify and presented no evidence.

Appellant argues that the State failed to show that he viewed or heard any portion of the movie, operated the projector, advertised the film, had a financial interest in the theater, or was even working at the theater on the date in question. He contends that the evidence shows nothing more than that Officer Morales saw appellant going from the concession area to the projection room three times during the course of the two movies. Appellant relies upon the holdings in *Goodman v. State*, 667 S.W.2d 135 (Tex.Crim.App.1984); *Skinner v. State*, 652 S.W.2d 773 (Tex.Crim. App.1983); and *Acevedo v. State*, 633 S.W.2d 856 (Tex.Crim.App.1982), to argue his point.

In the three cases appellant relies upon, the Court of Criminal Appeals reversed convictions for the exhibition and sale of obscene material essentially stating that the State must show how a defendant's conduct, not status, was criminal. For example, in *Beier v. State*, 687 S.W.2d 2 (Tex.Crim.App.1985), the Court of Criminal Appeals reviewed its holding in *Volkland v. State*, 510 S.W.2d 585 (Tex.Crim.App. 1974) and held that proof that the defendant was a manager of an adult bookstore, by itself, would not support a conviction for the exhibition and sale of obscene material. The court stated that without proof that the defendant acted in some way to direct, aid, encourage or assist in the sale of the obscene material, the evidence would not support the defendant's conviction.

unpublished opinion, Cause No. 13–88–625–CR.

The present case is distinguishable from these cited cases because appellant here was accused of **"promoting,"** and not merely "exhibiting," obscene material. The unobjected definition of "promote" given in the trial court's charge was "to manufacture, issue, sell, give, provide, lend, deliver, transfer, transmit, distribute, circulate, disseminate, present, exhibit, or advertise, or to agree to do the same." *See* Tex. Penal Code Ann. § 43.21(a)(5) (Vernon 1989). Thus, to "promote" obscenity a defendant could do any of several statutory acts that might not constitute "exhibiting," yet still qualify as the charged offense. We pause to note that the jury was not instructed on the law of parties; therefore, in order for the jury's verdict to be valid, there must be some evidence that appellant committed one or more of the acts listed in the charge to promote the film.

We find substantial direct and circumstantial evidence to support appellant's conviction. Officer Morales testified that on previous occasions appellant's position as theater manager involved employing personnel, purchasing supplies and giving orders involving the theater facility. Even more important, was the undisputed evidence that appellant and his family owned the theater and that appellant had a financial interest in the income derived from the films exhibited.

When appellant was arrested, he ordered the projectionist to "break down" the movie and personally packed the film reels away. This was evidence that appellant controlled the projection room operations. By telling Officer Morales that he made the arrest too late to seize any film pieces made during the splicing procedure, appellant showed that he was familiar with the general content of the movie and knew the purpose of the arrest warrant and search.

Applying the facts of appellant's past conduct and conduct on the nights in question to the definition of "promotion" as contained in the trial court's charge, the jury properly found that appellant had general power and control of the theater. The jury properly determined that appellant, as proprietor and manager of the theater,

knew the theater presented and exhibited to its customers, at least on the instant occasion, films containing obscene material, that he allowed such activity to occur, and that he derived some monetary compensation for providing such a forum. Based upon all of this evidence, the jury rationally found appellant guilty as charged.

The judgment of the trial court is AFFIRMED.

DORSEY, J., dissented and filed an opinion.

DORSEY, Justice, dissenting.

I respectfully dissent. I do not find sufficient evidence to show that appellant committed any of the prohibited acts included in the definition of "promoting" obscenity.

It is important to note that the jury was not charged on the law of parties. Therefore, if appellant's conviction is to be affirmed, the conviction must be supported by evidence that appellant personally did something to "promote obscenity."

As correctly set out in the Majority's opinion, the appellant was accused of promoting, and not merely exhibiting, obscene material. The court's charge correctly defined "to promote," quoting the statute, as "to manufacture, issue, sell, give, provide, lend, deliver, transfer, transmit, distribute, circulate, disseminate, present, exhibit, or advertise, or to agree to do the same." This expansion of prohibited activity from merely exhibiting obscene material to promoting it, with the numerous definitions of promotion, is the rationale of the majority for distinguishing the cases cited by appellant and ultimately the affirmance of the conviction.

The fatal flaw of the majority's analysis is, although it takes comfort in the sixteen verbs defining the promotion of obscenity to expand the crime from what it was formerly, that it is unable to choose the applicable criminal act and show how Mr. Brady committed it. The majority concludes that one may be convicted for promoting obscenity, but it fails to state which of the acts that define "promoting" were done by appellant. Upon reviewing the fifteen acts

which constitute "promoting" obscenity, plus the final "to agree to do the same," the only one I find that could arguably describe appellant's conduct is "to exhibit," and I cannot find any evidence to show that appellant personally exhibited the film.

The majority is content in its review of the evidence to summarily conclude that appellant "promoted" the film. I fear the majority is relying on some definition of "promoting" that the legislature did not include in the definition. Regardless of the reasons the legislature chose to limit the definition of "promoting obscenity," it is not a proper function of a court to expand the scope of criminal activity beyond what the lawmaker has given. Such judicial activism is properly criticized daily by commentators, political leaders, and candidates for election, including those for the judiciary. How much more heinous is this judicial lawmaking in the context of criminal law, when one is entitled to know what activities are unlawful in order to avoid violating the law.

I also fear that the majority, in its haste to uphold a conviction of someone probably doing a "nasty thing," has inserted a new "close-enough" clause in the definition of "promoting obscenity" so as to relieve the State from proving the elements of the crime. The newly prohibited act appears to be "having anything to do with the sale or exhibition" of an obscene film. The very cases cited in the majority opinion instruct that this approach is wrong.

I now turn to what I believe are the majority's improper reliance on the evidence to support the conviction. First, the majority finds that appellant "deprived some monetary compensation for providing" a forum for the film to be shown. I have searched the record from cover to cover and have been unable to find any evidence that appellant received monetary compensation for "providing a forum." If I understand the majority's analysis, being an incorporator makes one an owner and, in turn, also gives one a financial interest. My review of the evidence shows that the Articles of Incorporation for this theater were filed with the Secretary of State on April 11, 1972. Tommy, Jacqueline, and Scott Brady signed as incorporators. It has never been my understanding that evidence showing that someone was an incorporator eighteen years ago is sufficient to show that he has an ownership, and thus a financial, interest in the corporation today. There is no other evidence that appellant had a financial interest in the theater.

Next, the majority indicates that there is evidence, admitted through Officer Morales, that appellant was "the manager." Appellant was apparently the theater's manager when Morales worked at the theater. When asked directly whether he knew if appellant was the manager at the time concerned here, Morales answered, "I saw him there. That's all I can tell you." Upon further questioning, Morales detailed appellant's past duties by saying "he used to give the orders to everybody." Morales admitted that this activity occurred some time ago. Morales saw appellant give no order nor direct anyone to do anything on the dates relevant here, save for one order to Hankin to "break down the film." I fail to see how this order is one which promotes obscenity. Although the record is somewhat unclear, it appears that Morales' ambiguous testimony about appellant's management status was based on events observed years before the present case. This evidence is so stale that it does not circumstantially support the conclusion the majority reaches, and even if it were not stale, the very cases cited by the majority hold that evidence of one's status is insufficient to support a conviction.

The State simply failed to provide evidence to show that appellant *did* anything prohibited by statute. As a result, no rational finder of fact could have found beyond a reasonable doubt that appellant manufactured, issued, sold, gave, provided, lent, delivered, transferred, transmitted, distributed, circulated, disseminated, presented, exhibited, or advertised, or agreed to do any of the above. The most the evidence shows is that appellant was there and seemed to be in charge, neither of which is a criminal act. I dissent.