Leslie Clinton **BERG**, Appellant,

v.

The **STATE** of Texas, Appellee.

No. 58658.

Court of Criminal Appeals of Texas,
Panel No. 2.

April 2, 1980.

Rehearing Denied June 11, 1980.

Kenneth W. Boyd, Cleburne, for appellant.

Dan M. Boulware, County Atty. and Wayne Bridewell, Asst. County Atty., Cleburne, Robert Huttash, State's Atty., Austin, for the State.

Before DOUGLAS, ROBERTS and CLINTON, JJ.

## OPINION

CLINTON, Judge.

This is an appeal from a conviction for the offense of commercially exhibiting obscene material as denounced by V.T.C.A., Penal Code, § 43.23(a)(1). The jury assessed punishment at confinement in the county jail for 180 days and a fine of $1,000.00, but recommended probation.

■ Though appellant presents some seven grounds of error for our consideration, we need reach but one. In his fourth ground of error, appellant contends that the trial court erred in refusing to admit into evidence nine magazines and one film offered by appellant to reflect "contemporary community standards" as that term is utilized in the 1975 amendment to § 43.-21(1)(A).[1] As we find that exclusion of these materials in the context of the factual situation presented was error, we now reverse.

Former Deputy Sheriff Jim Scarber attended a showing at the Trail Drive-In on the evening of July 31, 1977 in Johnson County where the double feature "Dixie" and "Deviates in Love" was playing. Scarber purchased a ticket, watched both features and, the following day, consulted with the District Attorney regarding institution of criminal charges against appellant. Scarber procured a search warrant from a

---

1. V.T.C.A., Penal Code, § 43.21 was amended in 1979, see Acts 1979, 66th Leg., p. 1974, ch. 778, § 1 and again incorporated the expression "contemporary community standards," but modified its function.

Justice of the Peace in Alvarado and, with Officer Duval, again proceeded to the Trail Drive-In, and purchased tickets for admission. After watching "Dixie" and "Deviates in Love," the two men executed their arrest and search warrants by taking appellant, who had been the ticket taker on the evening in question, into custody and by confiscating the two films they had viewed. The jury viewed both films as part of the presentation of the State's case.

Appellant called only one witness during the guilt-innocence stage of the trial, private investigator Bob Jones. Through Jones, appellant offered for the jury's consideration some 38 magazines, two films and a book in an attempt to shed some light on one aspect of the somewhat murky definition of "obscenity" in V.T.C.A., Penal Code, § 43.21(1)(A). Since amended, the statute at the time of the trial below provided in pertinent part:

"In this subchapter:

"(1) 'Obscene' means having as a whole a dominant theme that:

"(A) appeals to the prurient interest of *the average person applying contemporary community standards* ;

"(B) depicts or describes sexual conduct in a patently offensive way; and

"(C) lacks serious literary, artistic, political, or scientific value." [2]

**2.** All emphasis is supplied throughout by the writer of this opinion unless otherwise indicated.

**3.** For a more detailed explanation of these materials, see the attached Appendix. It is difficult for this Court, at least on the state of the record before us, to determine just what was the basis for excluding these materials. The record reflects that after almost each magazine, film or book was offered by appellant, the prosecutor responded with the same boilerplate objection that the materials were not purchased "close enough in *time or distance* to the event in question." Yet an examination of the Appendix reveals that the trial court at one point or another admitted materials from locations as far away from Johnson County as Dallas, Fort Worth, and Grand Prairie, while refusing to admit other materials purchased from those same locales. Consequently we believe that the one rationale in excluding the proffered materials was that the materials were purchased after November 14, 1977, a date

■ Thus, it goes without saying that before members of a jury can decide whether given material is in fact obscene under the ambit of §§ 43.21 and 43.23, supra, they must first determine what are the governing "contemporary community standards." To bring before the jury evidence tending to show what these contemporary community standards were appellant was permitted to introduce 28 magazines, one film and the book, which were purchased in and about the area bounded by Dallas-Fort Worth to the north; Hillsboro to the south; Weatherford to the west; and Waxahachie to the east. The materials introduced and admitted into evidence were purchased by Bob Jones at various points in time from November 1 to November 14, 1977.

The trial court, however, excluded nine other magazines and one film from evidence on the basis that such materials "were not purchased close enough in time or distance to the event." [3]

The State advances a trio of arguments calculated to validate the trial court's decision to exclude the proffered material. For reasons about to be stated, we find none of them particularly persuasive.

At the outset, the State *does not* contend that appellant had *no right* to introduce materials tending to aid the jury in their determination as to what "contemporary

which the trial court set to somehow limit the amount of materials that appellant could introduce. Indeed this belief is supported by the following colloquy between the trial court and appellant's counsel after the trial court sustained the State's objection to a proffered magazine:

"THE COURT: You're now over into November 15. I'm sustaining the objection. That magazine is not admissible.
APPELLANT'S COUNSEL: *Because it was purchased November 15.*
THE COURT: *I just got through saying that.*"

Yet, from our own inexperienced eyes but sensitive viscera, the excluded materials portray such hard core pornography than many of the admitted exhibits that the trial court may well have been simply repulsed by them. In any event, the propriety of their exclusion is what *is at issue.*

community standards" might be. Indeed, the Supreme Court has consistently held that the accused has the right to introduce such material in a criminal proceeding relating to obscenity offenses. See, e. g., *Hamling v. United States*, 418 U.S. 87, 105–106, 94 S.Ct. 2887, 2901–02, 41 L.Ed.2d 590 (1974).

■ The State, however, argues that no error is shown inasmuch as the excluded exhibits are "comparable" to some of the other magazines which were eventually admitted—with the possible exception of two exhibits[4] "which go far beyond what the other magazines showed." To accept the logic of this argument would be, in essence, to substitute the State's lights for the jury's. That the jury might have believed that the excluded exhibits were "comparable" to those which they ended up viewing is a judgment that we are unable to make given the manifestly subjective nature of the jury's decision as to the ultimate obscenity issue. We therefore cannot accept the State's assertion that the error, if any, was harmless, based upon our own reading of the record and on what seems to us to have been the probable impact on the minds of an average jury given the exclusion of the proffered materials. *Chapman v. California*, 386 U.S. 18, 24, 87 S.Ct. 824, 828, 17 L.Ed.2d 705 (1967); *Harrington v. California*, 395 U.S. 250, 254, 89 S.Ct. 1726, 1728, 23 L.Ed.2d 284 (1969). Consonantly, we conclude that an average jury could have reasonably found the State's case significantly less persuasive had these exhibits been admitted. See *Schneble v. Florida*, 405 U.S. 427, 92 S.Ct. 1056, 31 L.Ed.2d 340 (1972).

■ The State next contends that the trial court was correct in excluding the proffered materials as their explicit nature, combined with the fact they were purchased in Dallas or Fort Worth, clearly evidence that they did not relate to what community standards are in Johnson County. This argument is bottomed on the mistaken notion that "contemporary community standards" are somehow confined to a clearly prescribed geographical area, in this case the territorial limits of Johnson County, and that in no instance can evidence tending to show contemporary community standards outside of that strictly defined area be admitted. That the State is mistaken in this assertion may be demonstrated by a brief review of the Supreme Court's treatment of the less than lucid concept of "contemporary community standards," a subject which we next address.

The Supreme Court first expressly held that obscenity enjoys no First Amendment protection in *Roth v. United States*, 354 U.S. 476, 77 S.Ct. 1304, 1 L.Ed.2d 1498 (1957) adopting what became to be regarded as the prevailing basic definition of obscenity:

> " . . . [W]hether to the average person, applying contemporary community standards, the dominant theme of the material taken as a whole appeals to prurient interest."

*Id.* at 489, 77 S.Ct. at 1311. The problem with *Roth* was that it did not explain whether the "contemporary community standards" were derived nationwide or from a more local venue. Of the few lower courts that considered the issue thereafter, most decided that the Court was referring to local community standards. See Waples and White, Choice of Community Standards in Federal Obscenity Proceedings, 64 Va. L.R. 399, 400 (1978).

Five years later in *Manual Enterprises v. Day*, 370 U.S. 478, 82 S.Ct. 1432, 8 L.Ed.2d 639 (1962), the Court held that Congress did not intend to make the community standard less than national under the federal obscenity statute noting:

> "We think that the proper test under this federal statute, reaching as it does to all parts of the United States whose population reflects different ethnic and cultural backgrounds, is a national standard of decency."

*Id.* at 488, 82 S.Ct. at 1437.

Two years later in *Jacobellis v. Ohio*, 378 U.S. 184, 84 S.Ct. 1676, 12 L.Ed.2d 793

---

**4.** Defendant's Exhibit Nos. 69 and 70. See Appendix, *infra*.

(1964), a state obscenity conviction, a plurality of the Court concluded that the Constitution required a national standard to determine whether materials are obscene. Four Justices, however, failed to endorse this view and two other Justices expressed the contrary belief that "community standards" under the *Roth* test meant local community standards. *Id.* at 200–01, 84 S.Ct. at 1685.

An effort to end the confusion surrounding the applicable "standard" was made in 1973 with a line of cases climaxed by *Miller v. California*, 413 U.S. 15, 93 S.Ct. 2607, 37 L.Ed.2d 419 (1973), in which Chief Justice Burger wrote:

> "To require a State to structure obscenity proceedings around evidence of a *national* 'community standard' would be an exercise in futility. . . . Nothing in the First Amendment requires that a jury must consider hypothetical and unascertainable 'national standards' when attempting to determine whether certain materials are obscene as a matter of fact."

*Id.* at 30–31, 93 S.Ct. at 2618. (Emphasis in original.) *Miller* also held that a "statewide" standard is permissible in State obscenity cases but not constitutionally required. *Id.* at 31, 93 S.Ct. at 2618.

In *Hamling v. United States*, supra, the next major obscenity disposition, in attempting to clear the muddied waters of "contemporary community standards," the Court pointed out:

> "A juror is entitled to draw on his own knowledge of the views of the average person in the community or vicinage from which he comes for making the required determination [of what contemporary community standards are], just as he is entitled to draw on his knowledge of the propensities of a 'reasonable' person in other areas of the law."

418 U.S. at 104–05, 94 S.Ct. at 2901. The Court in *Hamling* stressed that a principal concern in requiring that a judgment as to obscenity be made on the basis of "contemporary community standards" is to ensure that the material is judged neither on the basis of each juror's personal opinion nor by its effect on a particularly sensitive or insensitive person or group. This Court has echoed those sentiments in noting that this "standard" overrides any personal standard of any individual juror. *Evert v. State*, 561 S.W.2d 489 (Tex.Cr.App.1978).[5]

Probably the most comprehensive exposition of what a jury is entitled to take into account in determining what "contemporary community standards" are and consonantly, what an accused may be permitted to introduce to aid them in their determination, is made by the instant charge to the jury. The language from this charge is apparently taken from instructions of the district court in *Hamling v. United States*, supra, as set out at 418 U.S. at 146, 94 S.Ct. at 2922, n. 3:

> " 'Contemporary community standards' means the standard generally held throughout the *State of Texas* concerning sex and matters pertaining to sex. The phrase means the average conscience of the time and the present critical point in the compromise between candor and shame at which the community may have arrived *here and now*. You are the sole *judges of the contemporary community* standards of the *State of Texas*. In arriving at and applying your judgment, however, *you are not to consider your own standards* of what is good and bad. *You are not to condemn by your own standards*, if you know and believe them to be stricter than those generally held, and you are not to exculpate or excuse by your own standards if you know and believe them to be more tolerant than those that are generally held. In determining

**5.** Perhaps because not squarely presented most cases decided by this Court only point to the fact that the standards to be utilized in determining whether material is obscene as "contemporary community standards" mentioned in the Penal Code; the Court has not shed an appreciable amount of light on what this standard entails or what evidence may be introduced to illuminate this concept for the jury. Accordingly, we write today on what is basically a "clean slate."

and applying the contemporary community standards of the *State of Texas*, you are to call upon *everything that you have learned during the trial of this case* and everything that you have learned, seen, read and observed in your own experiences concerning the standards and values that are generally held. *You are not to limit yourself to what you have learned while residing in your present locality* or what you have learned and observed from and about people residing in your present locality. Rather, you are to take into consideration what you have learned or observed if you have lived or traveled throughout the *State of Texas*, and what you have learned and observed from people *any place in the State of Texas* whom you have met in business, at school, while you were in the armed services, or while you or they were traveling, and what you have learned from what you may have read during your lifetime. *You may very well determine that standards are no different in this locality and area than they are in any other part of the State of Texas.* But if you find standards here to be stricter than they are more generally throughout the State, *you are not to condemn by local standards*, and if you find standards here to be more tolerant than they are more generally throughout the State, you are not to exculpate or excuse by local standards. On the other hand, *you are not to judge community standards by one area that you know of where standards may either be stricter or more tolerant than they are either here or generally."*

■ We believe that one of the most critical phrases in the court's charge is that which informs the jury the phrase "contemporary community standards" means that compromise the community " . . . may have arrived *here and now.*"[6] The court enlarges upon this by directing the jurors to call upon everything that they have learned in the trial of this case; everything they have learned while living in their present locality; and everything they have learned or observed while traveling throughout the State of Texas. The trial court did not limit the jury to what its members had learned or observed within the perimeter of Johnson County. The trial court did not charge the jury not to consider anything it had learned or observed after the magical date of November 15, 1977. The trial court did not charge the jury that they could not consider anything more risque than *True Confessions* or the *Reader's Digest* in determining what contemporary community standards if they had happened to have read or viewed it during the course of their lifetime.

■ Yet in excluding the proffered materials on a basis no less tenuous than the fact they were purchased after November 15, 1977, only twenty-four hours after other materials which were admitted were purchased, the trial court acted in a manner wholly inconsistent with its charge to the jury. That the trial court has the inherent discretion to limit the quantum and quality of evidence that the accused seeks to admit in an obscenity proceeding in an attempt to determine contemporary community standards is settled, see *Hamling v. United States*, supra at 126, 94 S.Ct. at 2912. However in *Hamling*, the Supreme Court sanctioned the district court's actions in excluding the proffered materials inasmuch as the basis for the latter's ruling was that the materials "would tend to create more confusion than enlightenment in the minds of the jury." *Id.* at 127, 94 S.Ct. at 2912. Additionally, in the district court proceedings in *Hamling*, there was expert testimony from four defense witnesses regarding "contemporary community standards," a fact which impelled the Ninth Circuit to find that this reception of expert testimony cured the error, if any, in refusing to admit the proffered materials, a finding with which the Supreme Court concurred. *Id.* at 125, 94 S.Ct. at 2911. In the case at bar,

---

**6.** This phrase first appears in Learned Hand's opinion in *United States v. Kennerley,* 209 F. 119, 120–21 (D.C.N.Y.1913).

there was no expert testimony adduced on appellant's part, he obviously choosing to forego that route by attempting to introduce the proffered materials. In admitting the twenty-eight other magazines and one film, the trial court obviously found that they were of sufficient probative value to enlighten the jury in its determination. We believe that in excluding the other proffered materials on the basis that they were purchased only twenty-four hours after the material that was admitted, the trial court abused its discretion where there was no showing in this record and from examining the excluded material we are unable to find that such was any less probative or material than that which was admitted. We agree with appellant that the effect of such ruling was to exclude from the jury's consideration only those materials which were more akin in the manner they depicted sexual conduct to the movies forming the basis of this prosecution. The harm suffered by appellant is apparent. Though the jury was instructed to consider everything they had learned or observed during their travels and own experiences in this State, they were given an inaccurate portrait of what contemporary community standards might have been on the basis of viewing such ribald classics as *Intimate Romances* and *Real Detective*. Having exercised its discretion in admitting the more innocuous publications for the jury's benefit, the trial court abused that discretion in excluding the other proffered materials which we feel were no less and possibly more probative than their counterparts, to "assist the jurors in the resolution of the issues which they [are] to decide." See *Hamling v. United States*, supra at 105–06, 94 S.Ct. at 2901–02.

For the error pointed out above, the judgment is reversed and the cause remanded.

DOUGLAS, J., dissents.

## APPENDIX

| EXHIBIT NO. | TITLE | PURCHASED IN | DATE |
|---|---|---|---|
| 15 | Modern Love & Confessions | Alvarado | 11/ 1/77 |
| 16 | Intimate Stories | Alvarado | 11/ 1/77 |
| 17 | Real Love | Alvarado | 11/ 1/77 |
| 18 | Intimate Romances | Alvarado | 11/ 1/77 |
| 19 | Personal Romances | Alvarado | 11/ 1/77 |
| 20 | Freaked Out | Fort Worth | 11/ 1/77 |
| 21 | Lezzie Turn-On | Fort Worth | 11/ 1/77 |
| 22 | Confession Secrets | Hillsboro | 11/14/77 |
| 23 | True Secrets Yearbook | Hillsboro | 11/ 4/77 |
| 24 | True Secrets | Hillsboro | 11/ 4/77 |
| * 25 | Hustler | Fort Worth | 11/ 9/77 |
| 26 | Viva | Dallas | 11/10/77 |
| 27 | Playgirl Advisor | Dallas | 11/10/77 |
| 28 | Erotomic | Dallas | 11/10/77 |
| 29 | Cheri | Dallas | 11/10/77 |
| 30 | Penthouse | Dallas | 11/10/77 |
| 31 | Show | Grand Prairie | 11/10/77 |
| 32 | Adam | Grand Prairie | 11/10/77 |
| * 54 | The Big Cunt [Film] | Dallas | 11/15/77 |
| 55 | Real Detective | Waxahachie | 11/14/77 |
| 56 | Oui | Waxahachie | 11/14/77 |
| 57 | Gallery | Waxahachie | 11/14/77 |
| 58 | Real Confession | Grandview | 11/14/77 |
| 59 | Playgirl | Cleburne | 11/13/77 |
| 60 | Sir | Cleburne | 11/14/77 |
| 61 | True Secrets | Cleburne | 11/14/77 |
| 62 | Hustler | Cleburne | 11/14/77 |

* Materials not admitted

| EXHIBIT NO. | TITLE | PURCHASED IN | DATE |
|---|---|---|---|
| 63 | For Men Only | Cleburne | 11/14/77 |
| * 64 | Captured | Fort Worth | 11/15/77 |
| * 65 | Slaves of the Dungeonmaster | Fort Worth | 11/15/77 |
| 66 | A Study of S.M. | Dallas | 11/15/77 |
| * 67 | Bamboo | Dallas | 11/15/77 |
| * 68 | Merry Makers | Dallas | 11/15/77 |
| * 69 | Swallow-It | Dallas | 11/15/77 |
| * 70 | Hard-On U. | Dallas | 11/15/77 |
| * 71 | Lezbo Lovers | Dallas | 11/15/77 |
| * 72 | Hustler | Weatherford | 11/17/77 |
| 73 | Gasm | Waxahachie | 11/14/77 |
| 75 | Unnamed Film | Fort Worth | 11/ 1/77 |
| 77 | Lecherous Step-Father [Book] | Fort Worth | 11/ 1/77 |

* Materials not admitted