**Gerald Wayne ASAFF, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 05–89–00781–CR.**

Court of Appeals of Texas,
Dallas.

Sept. 28, 1990.

Discretionary Review Refused
Jan. 30, 1991.

Malcolm Dade, Dallas, for appellant.

Karen R. Wise, Dallas, for appellee.

Before HOWELL, KINKEADE and BURNETT, JJ.

## OPINION

HOWELL, Justice.

Gerald Wayne Asaff appeals his jury conviction for the offense of promotion of obscenity in violation of section 43.23 of the penal code. TEX. PENAL CODE ANN. § 43.23 (Vernon 1989). The jury assessed punishment at one year's confinement and a fine of $2,000. Appellant argues in his first and fourth points of error that the trial court erroneously excluded evidence regarding results of public opinion surveys and that the trial court erred in excluding from evidence magazines comparable to those sold by appellant. We sustain these points of error and reverse accordingly.

Dallas Police Officer John B. Nichols testified that on August 6, 1987, he was working undercover when he went to the Paris Adult Bookstore and Theatre No. 1 in Dallas. While inside the store, the officer selected a package consisting of three magazines, went to the cashier's counter, and purchased the magazines from appellant. After viewing the magazines' contents, Officer Nichols arrested appellant.

In his first point of error, appellant contends that the trial court erred in excluding

from evidence the results of two public opinion surveys dealing with community standards regarding sexually explicit materials. The surveys were performed by appellant's expert witness, Dr. Joseph Scott, who testified at trial about "contemporary community standards." The surveys consisted of the results of a public opinion poll regarding the community's attitudes toward sexually explicit materials. The trial court refused to admit the surveys into evidence. We determine that the exclusion of this evidence was error.

In defining that which is "obscene," the Texas Penal Code provides in pertinent part that:

(1) "Obscene" means material or a performance that:

(A) the average person, applying contemporary community standards, would find that taken as a whole appeals to the prurient interest in sex;

(B) depicts or describes:

(i) patently offensive representations or descriptions of ultimate sexual acts, normal or perverted, actual or simulated, including sexual intercourse, sodomy, and sexual bestiality; or

(ii) patently offensive representations or descriptions of masturbation, excretory functions, sadism, masochism, lewd exhibition of the genitals, the male or female genitals in a state of sexual stimulation or arousal, covered male genitals in a discernibly turgid state . . .; and

(C) taken as a whole, lacks serious literary, artistic, political, and scientific value.

. . . .

(4) "Patently offensive" means so offensive on its face as to affront current community standards of decency.

Tex. Penal Code Ann. § 43.21(a)(1), (4) (Vernon 1989).

Poll questions regarding sexually explicit materials were in pertinent part as follows:

16. Do you think standards have changed in Texas so that the showing of nudity and sexual activities in such video cassettes, movies and magazines, available to adults only, is *more* or *less* acceptable today than in recent years?

. . . .

17. Do you think it *is* or *is not* tolerated in Texas for the average adult to obtain and see adult video cassettes, movies and magazines showing nudity and sex if they should want to?

. . . .

18. Do you believe *you should* or *should not* be able to see any showing of actual sex acts between adults in X-rated video cassettes, or adult movies and magazines if you should want to?

. . . .

19. Many neighborhood video stores in Texas have video cassettes some of which are X-rated with adult performers and show nudity and sex. *Is it* or *is it not* tolerated in Texas for these establishments to rent and/or sell X-rated videos to adults requesting such material?

. . . .

20. Most adult video cassettes, movies and magazines show actual sex acts in great detail and with close-ups of the sexual organs. Would viewing this type of material cause *you* to have an unhealthy, shameful or morbid interest in sex?

(Emphasis in original.)

Appellant contends that the trial court erred in excluding the survey results from the evidence. He cites *Carlock v. State*, 609 S.W.2d 787 (Tex.Crim.App. [Panel Op.] 1980), in support of the proposition that such surveys should be admitted as relevant evidence to assist the jury in resolving the factual issue of the existing community standards concerning sexually explicit materials. The State contends that the survey results were inadmissible because some of the survey questions used the word "tolerated" rather than "accepted." The State also argues that the probative value of the survey evidence was outweighed by certain countervailing factors. *See* Tex.R.Crim. Evid. 403. In essence, the State contends that the manner in which the questions were phrased made the surveys inapplicable and irrelevant to a determination of what the State phrases as "acceptable" contemporary community standards.

■ Relevant evidence means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence. TEX.R.CRIM.EVID. 401. Evidence which is not relevant is inadmissible. TEX.R.CRIM.EVID. 402. Therefore, the primary question which we must decide is whether the survey results, based on the survey questions as phrased, were relevant to the issue of contemporary community standards in an obscenity prosecution. If the survey evidence was relevant, we must then determine whether it should nevertheless have been excluded under rule 403 of the rules of evidence. We note that a trial court has inherent discretion to limit the quantity and quality of evidence that an accused seeks to present in an obscenity proceeding in an attempt to establish contemporary community standards. *Berg v. State,* 599 S.W.2d 802, 807 (Tex.Crim.App. [Panel Op.] 1980). On the other hand, a defendant should be allowed to introduce appropriate evidence and expert testimony concerning a material element of the statutory definition of obscenity. *See Carlock,* 609 S.W.2d at 789.

■ We find little or no merit in the State's argument that the survey evidence should have been excluded because of the choice of words used in the poll questions. The State contends that because the survey questions used the word "tolerated" instead of "accepted," the survey results were inadmissible. The State maintains that, under Texas law, the issue is not whether allegedly obscene material is "tolerated" by the community, but whether it is "accepted" by the community. However, only two of the survey questions contained this allegedly inappropriate wording. Thus, the State's reasoning would not render the entirety of the survey results inadmissible. Moreover, the State's argument is otherwise not well founded.

Although never stated directly by the State, its argument assumes that the words "accepted" and "tolerated" have materially different meanings. In the context of community standards regarding obscenity, our research indicates otherwise. We find that applicable case law uses both terms. *Compare Carlock,* 609 S.W.2d at 788 (jury must determine what is or is not *acceptable* according to contemporary community standards) *with Smith v. United States,* 431 U.S. 291, 305, 97 S.Ct. 1756, 1766, 52 L.Ed.2d 324 (1977) (contemporary community standards must be applied by juries in accordance with their understanding of the *tolerance* of the average person in the community) *and Red Bluff Drive–In, Inc. v. Vance,* 648 F.2d 1020, 1029 (5th Cir. Unit A June 1981), *cert. denied,* 455 U.S. 913, 102 S.Ct. 1264, 71 L.Ed.2d 453 (1982) (line between protected expression and punishable obscenity must be drawn at limits of community's *tolerance* ).

The dictionary definitions of the terms "accept" and "tolerate" reveal a substantial amount of similarity, and even identity, between the two terms. For example, a definition of "accept" is to "acknowledge or recognize as appropriate, *permissible,* or inevitable," whereas "tolerate" is defined as "to *permit* the existence or practice of[;] allow without prohibition or hindrance." WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 11,2405 (1981) (emphasis added). "Accept" is also defined as "to take without protest[;] *endure* or *tolerate* with patience"; "tolerate" is also defined as "to *endure* with forbearance or restraint[;] put up with." *Id.* at 10,2405 (emphasis added). Thus, it is clear that the words "tolerate" and "accept" can be used to refer to the same concept. Our review of the case law indicates that the two terms have in fact been used by the courts to refer to the same concept in the context of community standards concerning obscenity.

The State certainly has not made a showing that the word "tolerated" was inappropriately used in the survey questions.[1] The

---

1. We do not foreclose the possibility that a showing could be made that the words "accept" and "tolerate" have different meanings (as well as substantially similar meanings). *See* WEB-

STER'S THIRD NEW INTERNATIONAL DICTIONARY 10–11, 2405. We simply observe that the State made no such showing in this case.

State does cite one case that approved the exclusion of similar survey results based on the "reasoning" that it is "axiomatic" that tolerance does not equate with acceptability. *See United States v. Pryba,* 678 F.Supp. 1225, 1230 (E.D.Va.1988), *aff'd,* 900 F.2d 748 (4th Cir.1990). The *Pryba* court did not further explain its "reasoning," and we are left unpersuaded by its peremptory statements.[2]

The State notes that material is patently offensive if it affronts current community standards of "decency," not "tolerance." *See* TEX. PENAL CODE ANN. § 43.21(a)(4) (Vernon 1989). The State also cites *Andrews v. State,* 652 S.W.2d 370, 381–82 (Tex.Crim.App.1983), for this proposition. However, we are unable to determine why it should follow that the survey results were inadmissible. In *Andrews,* the Court of Criminal Appeals was merely deciding the constitutionality of use of the term "decency" in the Texas statutory definition of material that is "patently offensive." The court stated that resolution of this issue did not involve the concepts of approval, respect, acceptance, or tolerance of allegedly obscene material. Instead, it involved the question of what would be *initially identified* as obscene by the average person applying contemporary community standards. *See Andrews,* 652 S.W.2d at 381. Thus, the State's attempt to substitute the concept of "decency" for "tolerance," like an accused's attempt to substitute the concept of "tolerance" for "decency," is an attempt to mix apples with oranges, and it amounts to semantic shadowboxing. *See Hoover v. Byrd,* 801 F.2d 740, 741–42 (5th Cir.1986).

■ Even if the State had demonstrated that the words "accept" and "tolerate" can be understood to have different meanings, that would not justify exclusion of the entirety of the survey results, since some of the questions did not use the word "tolerated." Moreover, we are inclined to the view that the complained of wording in the poll questions affected the weight of the evidence rather than its admissibility. *See Carlock,* 609 S.W.2d at 789–90. We determine that the survey results were relevant to resolution of the issue of contemporary community standards regarding the allegedly obscene magazines.

■ The State maintains that the probative value of the survey results was outweighed by the danger that the results would have been unfairly prejudicial to the State, that they would have confused the issues, and that they would have misled the jury. In support of this argument, the State repeats its contention that the survey results are flawed because of the use of the allegedly incorrect standard of "tolerance" as opposed to "acceptance." However, the State adds no further justification for this argument; therefore, based on the foregoing discussion, we reject it.

The State also argues that, because the questions focused on the issue of whether adults should be able to see or obtain material showing nudity and sex, the jury's attention would have been diverted from the central issue regarding the nature of the material allegedly promoted in this case to the political issue of whether existing obscenity laws should be changed. We find that, at most, only two of the survey questions contain this purported flaw. Thus, this argument cannot justify exclusion of all of the survey results. Furthermore, we determine that the answers to the allegedly improper questions would be probative of current community attitudes regarding allegedly obscene material, and we do not conclude that the probative value of the answers is *substantially* outweighed by any of the countervailing factors relied on by the State. *See* TEX.R.CRIM.EVID. 403. In our view, cross-examination of appellant's expert witness and argument to the jury provide the appropriate vehicles for expression of the State's contentions regarding the survey results. The alleged weaknesses in appellant's evidence, as perceived by the State, affect the weight to be given to the evidence by the jury, but they

**2.** Perhaps the *Pryba* court would have been well advised to investigate the meaning of the word "axiomatic."

do not render the evidence inadmissible. *See Carlock*, 609 S.W.2d at 789–90.

In accordance with *Carlock*, we determine that the trial court erred in excluding defense exhibits three and four. Those exhibits were relevant and admissible with respect to resolution of the issue concerning contemporary community standards as to allegedly obscene materials. *See* Tex.R. Crim.Evid. 401, 402. We sustain the first point of error.

■ Appellant contends in the fourth point of error that the trial court erred in excluding from evidence magazines that appellant's expert witness had purchased in adult bookstores in various Texas cities. Dr. Scott testified that the magazines aided him in forming an opinion about the attitudes of average adult Texans toward sexually explicit materials. He also stated that they were comparable in nature and content to the allegedly obscene magazines that appellant was accused of promoting.

We view *Berg* as dispositive of this issue. In that case, the Court of Criminal Appeals held that it was error to exclude from the evidence nine sexually explicit *magazines* that had been purchased in and around the Dallas–Fort Worth area in a case in which the defendant was charged with commercially exhibiting an obscene *film* in Johnson County. The court reasoned that such evidence was probative of contemporary community standards concerning allegedly obscene materials. *See Berg*, 599 S.W.2d at 804–08. Based on *Berg*, we sustain the fourth point of error.[3]

We reverse the judgment and remand the cause.

---

**3.** Because of our disposition of the first and fourth points of error, we find it unnecessary to consider the second and third points of error. We simply note that the State would be well advised to ensure that its proofs and arguments are confined to those which are relevant to the charged offense.