COURT OF APPEALS


EIGHTH DISTRICT OF TEXAS


EL PASO, TEXAS





THOMAS VARKONYI,


 Appellant,


v.


THE STATE OF TEXAS,


 Appellee. 

§


 


§


 


§


 


§


 


§



§

No. 08-06-00255-CR



Appeal from


 County Court at Law No. 7


of El Paso County, Texas


(TC # 20040C16770)




O P I N I O N



 Thomas Varkonyi appeals his conviction of obscenity. Appellant, acting pro se, waived his
right to a jury trial and tried the case to the court. The trial court found him guilty of promotion of
or possession with intent to promote obscene material. The court assessed punishment at
confinement in the El Paso County Jail for a term of twenty days. Finding no error, we affirm.

FACTUAL SUMMARY


 Appellant and the State waived their respective rights to a jury trial, and the trial court heard
Appellant's motion to suppress evidence at the same time it heard the case on the merits. The
following facts were developed during this combination hearing.

 In July 2004, David Bazan and John Robert Armendariz, El Paso police officers, participated
in an undercover operation involving Appellant. The investigation began when the police
department received information that a female student at El Paso Community College had applied
for a job offered by Appellant but when she went to his home, he solicited her to provide sex for
money and to be featured on a pornographic website. Bazan participated in the undercover operation
using the name "Daniel Hernandez" and Armendariz used the name "Maurizio Payan." They
contacted Appellant and pretended to be customers who wanted assistance in developing a website
involving cameras and pictures. They went to Appellant's home, spoke with him about launching
the website, and explained that they wanted him to work as a consultant in setting up the computers
and cameras. They also asked Appellant to show them how to operate the computer and the cameras. 
Appellant quoted them a fee for these services. Initially, they did not tell Appellant they wanted to
set up a pornographic website but Appellant asked several times what the website would involve. 
Finally, Armendariz asked Appellant if he objected to pornography. Appellant said no, and he
showed them various images on his computer, including a video depicting a woman being sexually
penetrated by a pony. During this meeting, Appellant gave the officers his business card listing an
e-mail address.

 One week after this conversation, Armendariz, using an address he set up as part of his
undercover identity, sent the following e-mail to the address Appellant had given him:

 I'm just keeping in touch with you. We're still working out the financial situation
with the equipment, but we are still moving forward with the plan. I'm still looking
at an all Latina site with member wish list on videos and pics that are wanted to be
seen. Also I've been looking at several sites to get ideas. By the way I've been
searching for the horse movie you showed us and wondering where you found it or
if you can send me files. I have a girl I'd like to introduce you to later on and we'll
talk some trade offs at a later time. Can you give me a quote on a website
construction base on the information I gave to you? And can we [illegible] another
meeting at your best chance to talk some more ideas? If [illegible] would like we can
meet at a club and get some drinks and see some ladies and get some more contacts. 


Armendariz received the following reply from Appellant's e-mail address:


 I can't really quote you on the cost of designing your website without more specific
info on what exactly you wish to show on each page, how different links/pages (to
determine bandwidth and space required number of DNS (Domain Names) you will
want to use. Each name will have [illegible] registered and renewed yearly about
$20/name. Monthly fees for [illegible] hosting and upkeep can be $30-$100/months
plus shopping cart fees, depending on what you will choose to host. I attached one
clip of the Pony enjoying himself, on good faith. [illegible] can have more when I
get to enjoy one of the ladies you offered to introduce to me. You can call me
anytime for more info or to set-up another meeting.


A video was attached to the e-mail--the same bestiality video viewed by the officers at Appellant's
home. Armendariz specifically testified that he did not alter, change, fabricate, or reword the e-mail
and that a printout of the e-mail was a true and correct copy of the e-mail he received from
Appellant. When the State offered into evidence the bestiality video (State's Exhibit 1) and the
print-out of the e-mail (State's Exhibit 2), Appellant objected that they were untrue and
unsubstantiated. In support of his argument, Appellant introduced evidence showing that it is easy
to create an e-mail address using someone else's name. (1) The trial court overruled those objections
and admitted the exhibits into evidence.

 Appellant's twenty-four-year-old son, Miguel Varkonyi, testified that he and his brothers had
downloaded pornographic material onto his father's computer and he recalled the "donkey and a
woman" video as one of those videos. He had seen this particular video on many computers and he
described it as a "viral video" which is a title given to a video when it receives a certain number of
"hits" on the internet. Miguel admitted that he did not have the video on his own computer. Miguel,
who had worked with his father in the computer business, testified that it was not possible to attach
a 140 kilobyte video to an e-mail and send it to a public e-mail address. In addition to Miguel's
testimony, Appellant offered the testimony of four customers who testified Appellant had never
shown them anything obscene or pornographic. The trial court subsequently entered a written order
denying Appellant's motion to suppress, stating that the evidence established that Appellant freely
admitted the undercover officers into Appellant's home, voluntarily showed them the video alleged
to be obscene, and voluntarily transmitted the video as an e-mail attachment. The order expressly
states that the court was not persuaded by Appellant's entrapment and technological impossibility
arguments. In the same order, the trial court found Appellant guilty as charged in the information. 
ENTRAPMENT


 In Issue One, Appellant contends that his prosecution should have been dismissed because
it was the result of illegal entrapment. (2) Appellant did not file a written motion to dismiss asserting
entrapment as a matter of law but Appellant raised the issue at the pretrial hearing (3) with the consent
of the trial court. At that hearing, he argued that the trial court should dismiss the case against him
because he was entrapped. The trial court denied Appellant's motion after the trial on the merits had
concluded.

 Entrapment is a defense to prosecution requiring the defendant to show that he engaged in
the conduct charged because he was induced to do so by a law enforcement agent using persuasion
or other means likely to cause persons to commit the offense. See Tex.Pen.Code Ann. § 8.06(a)
(Vernon 2003). Conduct merely affording a person an opportunity to commit an offense does not
constitute entrapment. Tex.Pen.Code Ann. § 8.06(a).

 Normally, a defense such as entrapment is a question for the fact finder to decide unless as
a matter of law the accused has established beyond a reasonable doubt that he was entrapped. 
Hernandez v. State, 161 S.W.3d 491, 498 n.12 (Tex.Crim.App. 2005); Melton v. State, 713 S.W.2d
107, 113 (Tex.Crim.App. 1986). The issue is usually reserved for the fact finder because it is
determined largely by weighing facts and assessing credibility. Hernandez, 161 S.W.3d at 498. A
defendant may, however, raise the legal issue of entrapment to the trial judge in a pretrial hearing
under Article 28.01 of the Code of Criminal Procedure. Hernandez, 161 S.W.3d at 498; Tex.Code
Crim.Proc.Ann. art. 28.01, § 1(9)(Vernon 2006). (4) A defendant is entitled to dismissal of the
charges under Section 8.06 of the Penal Code in a pretrial hearing context only when he can establish
entrapment as a matter of law with conflict-free, uncontradicted, uncontested, or undisputed
evidence. Hernandez, 161 S.W.3d at 499. If the facts concerning entrapment are in dispute, there
cannot be entrapment "as a matter of law" determined at the pretrial stage. Id. It is the defendant,
not the State, who must establish beyond a reasonable doubt that he was entrapped. Id. At the
pretrial stage, the State has no burden to disprove the factual defense of entrapment beyond a
reasonable doubt. Id. When an entrapment defense is presented in either the pretrial or trial context,
the fact finder is authorized to weigh the evidence and draw a conclusion as to whether that evidence
establishes entrapment as a matter of law in the pretrial context or as a matter of fact or law in the

 trial context. Id. at 500. A defendant's testimony which is not directly contradicted at a pretrial
hearing may nonetheless be "disputed" because the trial judge, as the sole trier of fact, is not required
to believe that testimony. Id. In such a case, a trial court does not err in overruling a motion to
dismiss. Id.

 In reviewing a trial court's denial of a defendant's pretrial motion to dismiss based on
entrapment "as a matter of law," an appellate court determines de novo whether any rational trier of
fact could conclude that the undisputed facts failed to establish all of the elements of entrapment. 
Id. Our review must take into account that the trier of fact was free to accept or reject all or any
portion of any witness's testimony. Id.

 Appellant did not testify at trial. Instead, he sought to establish his entrapment defense
through his cross-examination of Officers Bazan and Armendariz. Appellant complains that it was
the undercover officers who urged him to "promote the video by asking him to email it to them; that
is, the criminal design originated in the mind of the police, not Varkonyi's mind, and induced him
to commit a crime."

 The State argues that the offense was complete before Appellant e-mailed the video to the
police . The information alleged that Appellant, knowing the content and character of the obscene
material, promoted or possessed with intent to promote obscene material, to wit: material depicting
sexual bestiality. Promotion of obscene material includes its presentation and exhibition. See
Tex.Pen.Code Ann. § 43.21(a)(5)(Vernon 2003). The officers testified that they did not ask
Appellant for any pornographic material when they were at his home in early July 2004. Instead,
Appellant, having been asked by Armendariz whether he had a problem with pornography, presented
and exhibited the video to them. The offense was complete at that point, and thus, Officer
Armendariz's subsequent e-mail request for the video could not have entrapped Appellant into
committing the already-complete offense. Because Appellant failed to prove his entrapment defense
as a matter of law, the trial court did not err by denying his motion to dismiss the prosecution. We
overrule Issue One.

AUTHENTICATION


 In Issue Two, Appellant contends that the evidence was legally and factually insufficient to
sustain his conviction because the State failed to authenticate the e-mails and the attached video
evidence admitted as State's Exhibits 1and 2. He also argues that the evidence is inadmissible
because the State failed to produce the originals as required by Rules of Evidence 1001 and 1002.
In reviewing both the legal and factual sufficiency of the evidence, we consider all the evidence
admitted at trial, even improperly admitted evidence. Moff v. State, 131 S.W.3d 485, 488
(Tex.Crim.App. 2004). In the event a portion of this evidence was erroneously admitted, the accused
may complain on appeal of such error. Thomas v. State, 753 S.W.2d 688, 695 (Tex.Crim.App.
1988). If his complaint has merit and the error is reversible, a new trial should be ordered. Id. But
the fact finder does not act irrationally taking such evidence into account. See id. Appellant's
complaints regarding the sufficiency of the evidence resulting from the alleged inadmissibility of the
e-mail evidence are without merit. We will, however, address his arguments regarding the
admissibility of State's Exhibits 1and 2.

Preservation of Error


 To preserve an issue for review, a party must timely object and state the grounds for the
ruling sought from the trial court with sufficient specificity to make the trial court aware of the
complaint, unless the specific grounds were apparent from the context of the objection. 
Tex.R.App.P. 33.1(a)(1)(A). On appeal, Appellant argues that State's Exhibits 1and 2 are
inadmissible because they were not properly authenticated and the State did not produce the originals
in court as required by Rules 1001 and 1002 of the Texas Rules of Evidence. The only objections
made by Appellant at trial to the two exhibits is that they were untrue and unsubstantiated. 
Appellant's objection that the evidence is "untrue" does not state a legal ground for exclusion of the
evidence. His objection that the evidence is "unsubstantiated" is sufficient to preserve a complaint
that the evidence was not properly authenticated. But his objection is insufficient to preserve the
argument made on appeal that the copies of the e-mail and video are inadmissible under Tex.R.Evid.
1001 and 1002 because the State failed to produce the originals in court, the admission of a duplicate
is unfair, and the State had failed to show that the copies accurately reflected the data contained in
a computer.

Authentication of State's Exhibits 1 and 2


 We review a trial court's ruling on the admissibility of evidence for an abuse of discretion.
Moses v. State, 105 S.W.3d 622, 627 (Tex.Crim.App. 2003); Willover v. State, 70 S.W.3d 841, 845
(Tex.Crim.App. 2002). We will uphold the trial court's ruling as long as it is within the zone of
reasonable disagreement. Moses, 105 S.W.3d at 627. The requirement of authentication or
identification as a condition precedent to admissibility is satisfied by evidence sufficient to support
a finding that the matter in question is what its proponent claims. Tex.R.Evid. 901(a). Subsection
(b) of Rule 901 includes a non-exclusive list of examples of authentication or identification
conforming with the requirements of this rule. Tex.R.Evid. 901(b). The fourth example is as
follows:


 (4) Distinctive characteristics and the like. Appearance, contents, substance,
internal patterns, or other distinctive characteristics, taken in conjunction with
circumstances.


Tex.R.Evid. 901(b)(4). Thus, a letter is properly authenticated under Rule 901(b)(4) if its
appearance, contents, substance, or other distinctive characteristics, taken in conjunction with
circumstances, support a finding that the document is what its proponent claims. Tex.R.Evid. 
901(b)(4). The Texas Rules of Evidence Handbook identifies another traditional method of
authentication permitted by Rule 901 known as the "reply-letter doctrine." Cathy Cochran, Texas
Rules of Evidence Handbook, Article IX: Authentication & Identification, at 915-15 (6th
ed. 2005). Under this doctrine, a letter received in the due course of mail purportedly in answer to
another letter is prima facie genuine and admissible without further proof of authenticity. Id. A
reply letter needs no further authentication because it is unlikely that anyone other than the purported
writer would know of and respond to the contents of the earlier letter addressed to him. Id. Because
the reply-letter doctrine has been applied to telegrams, Judge Cochran reasons that it logically would
apply to e-mail communications. Id.

 Armendariz testified at trial that he received the e-mail and attached video from Appellant
in direct response to an e-mail sent by Armendariz to Appellant inquiring whether Appellant would
send him the "horse movie" file. Under the reply letter doctrine, the e-mail is authenticated. The
e-mail is also authenticated under Rule 901(b)(4). The evidence at trial established that Appellant
showed the bestiality video to the officers in his home. In his e-mail sent to Appellant's e-mail
address, Armendariz stated that he had been searching for the horse movie "you showed us" and
asked whether Appellant would either tell him where he found it or send him the file. In direct
response to this e-mail, Appellant replied, "I attached one clip of the Pony enjoying himself . . . ." 
Armendariz expressly testified that he received the e-mail with the attached video and the officers
identified the video attached to the e-mail as the same one shown to them in Appellant's home. 
Appellant was in a unique position of knowing that Armendariz's inquiry about the "horse movie"
concerned the bestiality video seen when the officers were at Appellant's home. Given the
distinctive content of the e-mail and the attached video and the circumstances under which it was
received by Armendariz, we cannot conclude that the trial court abused its discretion in deciding that
the evidence was authenticated under Rule 901(b)(4). See Shea v. State, 167 S.W.3d 98, 105
(Tex.App.--Waco 2005, pet. ref'd)(State, in prosecution for indecency with a child, adequately
authenticated six e-mail communications from defendant to victim; victim testified that she came
to know defendant's e-mail address because he would call to confirm that she had received an e-mail
from him, several messages made reference to defendant's occupation, one message indicated
familiarity with victim's locker number, and victim testified that content of e-mail messages was
similar to conversations she had had with defendant over the telephone); Massimo v. State, 144
S.W.3d 210, 216 (Tex.App.--Fort Worth 2004, no pet.)(trial court acted within its discretion in trial
for harassment by electronic communication in concluding that copy of certain e-mail allegedly sent
by defendant to victim was sufficiently authenticated, where e-mail referred to altercation between
defendant and victim that occurred shortly before e-mail was sent, victim recognized defendant's
e-mail address, victim testified that only defendant and few other people knew about things
discussed in e-mail, victim testified that way in which e-mail was written was way in which
defendant would communicate, and witness testified that she saw defendant send similar threatening
e-mail to victim using same vulgarities). Issue Two is overruled.


SUFFICIENCY OF THE EVIDENCE


 In his third issue, Appellant challenges the legal sufficiency of the evidence to prove that the
bestiality video is obscene. (5) Pointing to evidence that the video is considered a "viral video,"
Appellant argues that its popularity indicates that the community embraces rather than rejects it.

 The information alleged that Appellant, knowing the content and character of the obscene
material, promoted or possessed with intent to promote obscene material, to wit: material depicting
sexual bestiality. Promotion of obscene material includes its presentation and exhibition. See
Tex.Pen.Code Ann. § 43.21(a)(5). The term "obscene" is statutorily defined:

 (1) 'Obscene' means material or a performance that:


 (A) the average person, applying contemporary community standards, would
find that taken as a whole appeals to the prurient interest in sex;


 (B) depicts or describes:


 (I) patently offensive representations or descriptions of ultimate
sexual acts, normal or perverted, actual or simulated, including sexual
intercourse, sodomy, and sexual bestiality; or


 (ii) patently offensive representations or descriptions of masturbation,
excretory functions, sadism, masochism, lewd exhibition of the
genitals, the male or female genitals in a state of sexual stimulation
or arousal, covered male genitals in a discernibly turgid state or a
device designed and marketed as useful primarily for stimulation of
the human genital organs; and


 (C) taken as a whole, lacks serious literary, artistic, political, and scientific
value.


Tex.Pen.Code Ann. § 43.21(a). 


 Section 43.21(a)'s definition of obscene comports with the test set forth in Miller v.
California, 413 U.S. 15, 24, 93 S.Ct. 2607, 2615, 37 L.Ed.2d 419 (1973). The Penal Code defines
"material" to mean anything tangible that is capable of being used or adapted to arouse interest,
whether through the medium of reading, observation, sound, or in any other manner, but does not
include an actual three dimensional obscene device. Tex.Pen.Code Ann. § 43.21(a)(2). "Patently
offensive" means so offensive on its face as to affront current community standards of decency. 
Tex.Pen.Code Ann § 43.21(a)(4).

 In determining whether material is "constitutionally obscene," appellate courts are obligated
to independently review and evaluate the material in accordance with the three-part test set out in
Miller. Castillo v. State, 79 S.W.3d 817, 826 (Tex.App.--Dallas 2002, pet. ref'd), citing Andrews
v. State, 652 S.W.2d 370, 383 (Tex.Crim.App. 1983). This three-pronged test requires the court to 
consider whether: (1) the average person, applying contemporary community standards would find
the work, taken as a whole, appeals to the prurient interest in sex; (2) the work depicts or describes
in a patently offensive way, sexual conduct specifically defined by the applicable state law; and (3)
the work, taken as a whole, lacks serious literary, artistic, political, or scientific value. Miller, 413
U.S. at 24, 93 S.Ct. at 2615; Andrews, 652 S.W.2d at 378. Work which does not appeal to the
prurient interest, does not depict sexual conduct in a patently offensive way, and does not lack
serious literary, artistic, political, or scientific value is constitutionally protected. See Andrews, 652
S.W.2d at 384.

 Appellant introduced evidence at trial that the bestiality video is considered a "viral video,"
a description given to a video when it receives an unspecified number of "hits" on the internet. He
reasons that because the video is so popular in the internet community, community standards
embrace rather than reject the video. Appellant's reliance on the alleged popularity of the video in
the world-wide internet community is misplaced. If the appropriate community standard is not a
national one, it is certainly not a world-wide internet standard. See Miller, 413 U.S. at 32-33, 93
S.Ct. at 2619-20; see also Berg v. State, 599 S.W.2d 802, 805 (Tex.Crim.App. 1980)(rejecting
notion that contemporary community standards could be restricted to the territorial limits of Johnson
County, and approving a jury charge submitting the issue under "the contemporary community
standards of the State of Texas"). Appellant also presented evidence through his son that the video
was popular in dorms. While college campuses are one part of the community, they do not define
the standard for the entire community. We have reviewed the video under a statewide community
standard and find that the average person in Texas would find the images depicting a woman being
sexually penetrated by a pony appeals to the prurient interest in sex, depicts sexual conduct in a
patently offensive way, and lacks serious artistic or scientific value. Issue Three is overruled.

CONSTITUTIONAL CHALLENGE


 In his final issue, Appellant brings for the first time on appeal a facial challenge to the
constitutionality of the Texas obscenity statute because it criminalizes, through its definition of
"promote," the transfer of material which can lawfully be used or viewed in private. Appellant bases
his constitutional challenge on the right of privacy under the Due Process Clause of the Fourteenth
Amendment. The State responds that Appellant's conduct of exhibiting the obscene bestiality video
to police in his home and transmitting the video by e-mail are not constitutionally protected
activities, and therefore, Section 43.23(c)(1) of the Penal Code was constitutionally applied to him
and his conduct.

 A facial challenge to a statute is the most difficult because the challenger must establish that
no set of circumstances exists under which the statute will be valid. Santikos v. State, 836 S.W.2d
631, 633 (Tex.Crim.App. 1992); Ex parte Dave, 220 S.W.3d 154, 156 (Tex.App.--Fort Worth 2007,
pet. ref'd). Since a statute may be valid as applied to one set of facts and invalid as applied to
another, the challenger must first show that the statute is unconstitutional as applied to him in his
situation. Santikos, 836 S.W.2d at 633; Ex parte Dave, 220 S.W.3d at 156. That the statute may be
unconstitutional as applied to others is insufficient to support a facial challenge. Santikos, 836
S.W.2d at 633; Ex parte Dave, 220 S.W.3d at 156. When we are confronted with an attack on the
constitutionality of a statute, we presume that the statute is valid and that the legislature has not acted
unreasonably or arbitrarily. Rodriguez v. State, 93 S.W.3d 60, 69 (Tex.Crim.App. 2002). The
burden rests on the individual who challenges the statute to establish its unconstitutionality. Id.

 State statutes designed to regulate obscene material must be carefully limited, because the
First and Fourteenth Amendments prohibit making an individual's private possession of obscene
material a crime. Ex parte Dave, 220 S.W.3d at 156, citing Miller v. California, 413 U.S. 15, 23-24,
93 S.Ct. 2607, 2614, 37 L.Ed.2d 419 (1973) and Stanley v. Georgia, 394 U.S. 557, 568, 89 S.Ct.
1243, 1249, 22 L.Ed.2d 542 (1969). Obscene material itself, however, is not protected by the First
Amendment. Ex parte Dave, 220 S.W.3d at 156, citing Paris Adult Theatre I v. Slaton, 413 U.S.
49, 69, 93 S.Ct. 2628, 2641, 37 L.Ed.2d 446 (1973). The Supreme Court has expressly rejected the
argument that the constitutionally-protected right to possess obscene material in the privacy of the
home creates a correlative right to receive it, transport it, or distribute it. U.S. v. Orito, 413 U.S. 139,
141, 93 S.Ct. 2674, 2677, 37 L.Ed.2d 513 (1973); United States v. 12 200-Ft. Reels of Super 8mm.
Film, 413 U.S. 123, 128, 93 S.Ct. 2665, 2669, 37 L.Ed.2d 500 (1973); United States v. Thirty-Seven
(37) Photographs, 402 U.S. 363, 376, 91 S.Ct. 1400, 1408, 28 L.Ed.2d 822 (1971); see also, United
States v. Reidel, 402 U.S. 351, 356, 91 S.Ct. 1410, 1412-13, 28 L.Ed.2d 813 (1971)(holding that
constitutionally-protected right to possess obscene material in the privacy of the home does not 
require that the Court fashion or recognize a constitutional right for commercial purveyors of
obscene material to distribute or sell it).

 Appellant argues that the United States Supreme Court's decision in Lawrence v. Texas, 539
U.S. 558, 123 S.Ct. 2472, 156 L.Ed.2d 508 (2003) supports his argument that Section 43.23's
definition of "promote" renders the obscenity statute unconstitutional because it criminalizes
constitutionally-protected conduct, that is, the possession of obscene material in the privacy of an
individual's home. In Lawrence, the Supreme Court held unconstitutional a Texas statute which
made it a crime for two persons of the same sex to engage in certain intimate sexual conduct. Id.,
539 U.S. at 577-78, 123 S.Ct. at 2483-84, 156 L.Ed.2d 508. The Supreme Court held that the right
to liberty embodied in the Due Process Clause protects private, consensual sexual conduct between
homosexuals from governmental intrusion. Id., 539 U.S. at 578, 123 S.Ct. at 2483-84, 156 L.Ed.2d
508. The court found that the Texas sodomy law impinged on the exercise of that liberty interest. 
Id., 539 U.S. at 578, 123 S.Ct. at 2484, 156 L.Ed.2d 508. 

 Although Lawrence does not involve the Texas obscenity statute, the Fifth Circuit relied
heavily on Lawrence in finding a portion of the Texas obscenity statute to be unconstitutional
because it criminalized the selling, advertising, giving, or lending of any device designed or
marketed for sexual stimulation unless the defendant could prove that the device was sold,
advertised, given, or lent for a statutorily-approved purpose. Reliable Consultants, Inc. v. Earle, 517
F.3d 738, 741 (5th Cir. 2008). The Fifth Circuit determined that the statute impermissibly burdened
the individual's substantive due process right to engage in private intimate conduct of his or her
choosing because an individual is unable to legally purchase a device in Texas. Id. The opinion
does not include in its analysis any of the Supreme Court cases holding that the
constitutionally-protected right to possess obscene material in the privacy of one's home does not
give rise to a correlative right to receive the materials or to sell or give it to others. We decline to
follow Reliable Consultants because we do not read Lawrence as overruling this line of authority. 
See Ex parte Dave, 220 S.W.3d at 159 (holding that Lawrence did not overrule Paris Adult Theatre
I v. Slaton (6) in which the United States Supreme Court upheld a Georgia statute virtually identical
to the Texas obscenity statute). Further, we find that Lawrence is inapplicable to the instant case
because it did not involve the promotion of obscene materials.

 The evidence admitted at trial established that Appellant committed two offenses of
promotion of obscene material, the first occurring when he presented or exhibited the material to the
officers in his home, and the second occurring when he e-mailed the video to Armendariz. Because
Appellant did not move for the State to elect upon which of those incidents it sought a conviction,
the conviction is supportable under either of the two theories. Appellant's conviction under either
theory does not criminalize constitutionally protected conduct. While Appellant's viewing of the
material in the privacy of his own home is protected conduct, his exhibition of the material to the
undercover police officers in the context of a business transaction involving the employment of
Appellant to set up a pornographic website is not. See Adams v. State, 804 N.E.2d 1169 (Ind. App.
2004)(rejecting defendant's argument that his conviction for exhibiting obscene materials must be
vacated because he displayed the images at his own residence where the evidence showed that the
defendant displayed the videos because he desired to make a sale of obscene matter to the
undercover police officer in response to showing him the images on the computer). Nor does
Appellant have a right to give obscene material to others. Consequently, his transmission of the
video as an e-mail attachment is not constitutionally-protected conduct. Section 43.23(c)(1) was
constitutionally applied to Appellant and his conduct under the facts of this case. We overrule Issue
Four. Having overruled all issues for review, we affirm the judgment of the trial court.



May 8, 2008 

 ANN CRAWFORD McCLURE, Justice


Before Chew, C.J., McClure, and Carr, JJ.


(Publish)
1. In an effort to prove his point, Appellant created an e-mail address using the prosecutor's name and sent an
obscene picture, purportedly from the prosecutor, to Appellant's e-mail address. 
2. Appellant has not challenged the sufficiency of the evidence supporting the fact finder's rejection of his
entrapment defense. Appellant's first issue states: "Was the arrest and prosecution of Varkonyi the result of an
attempted illegal entrapment?" In footnote 5 of his brief, Appellant argues: "In entrapment cases, the trial court, as the
trier of fact, must weigh the evidence and determine whether the defendant was entrapped as a matter of law. Soto v.
State, 681 S.W.2d 602, 604 (Tex.Crim.App. 1984)." At no point in the discussion of Issue One does Appellant argue
that the evidence is legally or factually insufficient to support the fact finder's rejection of his entrapment defense. 
Consequently, we have interpreted Issue One as arguing only that Appellant proved his entrapment defense as a matter
of law.
3. Because the trial court did not conduct a distinct hearing on the pretrial motions but instead melded the
suppression hearing and the trial on the merits, it is difficult to discern where the pretrial hearing ended and the trial on
the merits began. Nevertheless, we will address Appellant's entrapment issue as one which was raised and heard pretrial.
4. Although Article 28.01 allows the presentation of the entrapment defense in a pretrial motion to dismiss, it
is not required. Hernandez, 161 S.W.3d at 499 n.14, citing Bush v. State, 611 S.W.2d 428, 432 n.1 (Tex.Crim.App.
1981)(op. on reh'g).
5. The third issue alleges that the evidence is legally and factually insufficient to prove that the material is
obscene. The discussion under Issue Three does not include an argument demonstrating how the evidence is factually
insufficient. Further, in his prayer, Appellant only requests that we reverse the judgment of the trial court and render a
judgment of acquittal. Therefore, we construe his brief as raising only a legal sufficiency argument. 
6. 413 U.S. 49, 93 S.Ct. 2628, 37 L.Ed.2d 446 (1973).